IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Robert A. Brown, et al.,           :
                                              Case No. 2:11-cv-1122
          Plaintiffs,              :
                                              JUDGE JAMES L. GRAHAM
     v.                            :
                                              Magistrate Judge Kemp
Tellermate Holdings Ltd.,          :
     et al.,

          Defendants.              :


OPINION AND ORDER

     This employment case is before the Court by way of
plaintiffs Robert A. Brown's and Christine M. Brown's second
motion to compel discovery.  The motion is fully briefed.  For
the following reasons, the motion will be granted in substantial
part.

I.   Background

     The current dispute centers around certain document requests
served by the Browns.  Without getting into great detail, the
majority of the arguments made in their motion rest on the
premise that the Court must compel Tellermate to produce
documents it has already agreed to produce because, despite that
promise, it has simply failed to do so.  The Browns also express
some skepticism about certain statements made by Tellermate to
the effect that it does not have certain documents or that it is
unable to retrieve (and therefore lacks possession or control
over) certain documents in the possession of non-parties.  For
its part, Tellermate argues that it has now produced almost every
document requested, and the ones it has not produced are either
non-existent, not accessible to it, or protected by some
privilege.  The Court has attempted to ferret out those areas

where the parties actually appear to have a dispute susceptible
of judicial resolution, and those matters will be addressed
separately below.

II.  <u>Documents Promised but not Produced</u>

In their motion, the Browns identify a number of documents
which they believe Tellermate had agreed to produce but, at least
as of the date the motion was filed, had not.  They included
documents about a certain product (Ti-X), performance evaluations
for a number of other Tellermate employees, verified responses to
certain interrogatories, documents relating to other employees
who alleged discriminatory treatment, expense reports for two
other employees, and documents relating to the termination of
Michael Stafford's employment.  *See* Motion to Compel, at 4-6.

According to Tellermate's responsive memorandum, all of
these documents except for certain documents relating to Michael
Stafford's termination have been produced.  Tellermate suggests
that all of these matters are now moot.  The only issues
Tellermate discusses at any length in its responsive memorandum
relate to certain documents kept in a database called
salesforce.com, which is maintained by a non-party; sales data
for Tellermate customers Wal-Mart and McDonalds; and minutes of
meetings of the Tellermate board of directors.  As to the first
of these categories, Tellermate contends that it cannot produce
the documents because it does not have access to them.  As to the
second and third categories, Tellermate claims that it produced
everything it had.

In their reply, the Browns continue to dispute Tellermate's
claim that it has produced most of these documents.  They do
agree, however, that the expense reports they asked for have been
produced, and they acknowledge Tellermate's representation that
all board of directors' meeting minutes have been turned over
(although they remain unconvinced that there are not more such

documents, and they have asked for additional materials relating
to board meetings of both Tellermate and its parent, Tellermate
Holdings Limited).  They raise various issues about other
document productions as well.

It is somewhat difficult for the Court to resolve a dispute
about documents which does not take the form of argument about
whether they are relevant and discoverable, but whether they have
or have not been produced.  Tellermate says they have; the Browns
say not.  The documents in question are not before the Court.
The only way the Court can deal with such an issue is to accept
Tellermate's apparent concession that it has, and had, no
objection to producing the documents, and to place the obligation
to do so completely and responsively into the Court's order
resolving the motion.  That way, if it subsequently turns out
that the documents were not properly produced, there is a court
order upon which the Browns can rely.

The same approach must be applied to matters where the
Browns have raised specific issues about some of Tellermate's
responses, but, again, there is no dispute about the discoverable
nature of the documents or other information.  Many of these
specifics appear only in the reply brief (the opening memorandum
is more general), but they have been properly raised in response
to Tellermate's claim that it fully complied with its discovery
obligations by either producing the requested documents or
answering the interrogatories.  As to these matters, the Court
must assume that the facts are as stated in the reply, because
Tellermate has not moved for leave to file a surreply or
otherwise controverted the Browns' specific claims, and the Court
will cover these matters in this order.  This will be reflected
in the final section of the order, but will not be further
discussed here because there is no substantive matter requiring
judicial resolution.  The Court now turns to the substantive

areas of dispute.

### III.  Disputed Issues

### A.  The Rule 408 Claim

One of the categories of documents which the Browns asked
for related to claims made by other Tellermate employees of
discriminatory treatment.  As best the Court can determine,
records relating to two other employees are at issue here.

First, according to the reply memorandum, an employee named
Frank Mecka complained about age discrimination before his
employment was terminated in 2009.  The Browns attached a letter
which Tellermate wrote to Mr. Mecka's attorney in March of 2010
which appears to be a response to that claim.  *See* Reply
Memorandum, Exhibit 14.  That letter refers to two previous
letters on the same subject, both written earlier in 2010.  The
Browns claim these two letters have not been produced; from the
state of the record, the Court must reach the same conclusion.
Tellermate's memorandum does not specifically identify these
letters as ones withheld on grounds of privilege, but it is a
fair inference from the record that its more general claim of
privilege relating to settlement documents is intended to
encompass these letters.  Tellermate did attach to its responsive
memorandum two letters its counsel wrote which refer to Mr.
Mecka.  In a February 15, 2013 letter, counsel stated that the
Brown's "insistence" that Tellermate had withheld  documents
relating to Mr. Mecka was "wholly unfounded" and that the Browns
should "cease from raising any further issues in this regard."
At the same time, in the same paragraph of the letter,
Tellermate's counsel suggested that all of the "non-privileged
documents" pertaining to Mr. Mecka had been produced, but did not
specifically state that any documents had been withheld on
privilege grounds.  In the second letter, written on March 5,
2013, Tellermate appears to acknowledge that, in fact, the

additional letters identified by the Browns actually exist, but
it claimed that they were privileged under Rule 408.  *See*
Defendant's Memorandum, Doc. 33, Exhs. A and C.

Second, Tellermate apparently terminated the employment of
an employee named Michael Stafford.  It appears to be the Brown's
position that he also complained about discriminatory treatment
and they are entitled to documents relating to his claim against
Tellermate.  The Browns assert that some documents relating to
his termination have been produced, but the record does not
appear to contain these documents.  One of counsel's letters
describes them as multiple versions of separation letters which
might have attached drafts of an agreement, and indicates that
only one of these drafts was produced.  *See* Motion to Compel,
Exh. 2.  Tellermate's March 5, 2013 letter, cited above, also
appears to assert a Rule 408 privilege for any drafts of Mr.
Stafford's separation agreement, although it qualifies that
assertion with some uncertainty about whether any drafts actually
exist.

The Browns assert that Tellermate never previously claimed a
privilege for any documents relating to either Mr. Mecka's or Mr.
Stafford's allegations of discrimination and that Tellermate also
produced some documents relating to both of these employees.
They contend, alternatively, that the failure to have asserted
this privilege in response to the document request and to list
these documents on a privilege log is a waiver, or that the
production of some documents which are arguably privileged in the
same way is a waiver.  The Court does not have the benefit of any
briefing from Tellermate on these arguments, but must assume from
the record, which includes Tellermate's privilege logs, that the
Browns's statement that none of these documents ever appeared on
a privilege log is accurate.  Further, although Tellermate stated
generally in its responses to document requests that it was

producing all non-privileged responsive documents, it did not
flag these particular documents as being withheld.

There are a number of reasons why Tellermate's claim of the
Rule 408 privilege with respect to the Mecka and Stafford
documents fails.  Fed.R.Civ.P. 26(b)(5) provides that "[w]hen a
party withholds information otherwise discoverable by claiming
that the information is privileged," the party is required to
"expressly make the claim" and to provide certain information
about the information withheld as described in subsection (A)(ii)
of the Rule.  The responding party is obligated to make this type
of claim as part of its response, and unless the delay in
providing the information is "not excessive or unreasonable" the
failure to provide the log in a timely fashion waives the
privilege.  See White v. Graceland College Center for
Professional Development & Lifelong Learning, Inc., 586 F.Supp.2d
1250, 1266 (D.Kan. 2008); see also Banks v. Office of the Senate
Sergeant-at Arms and Doorkeeper, 226 F.R.D. 113, 117 (D.D.C.
2005)("federal courts are insistent upon the timely production of
a privilege log [and] have enforced waivers when the production
was not timely").  Further, blanket or boilerplate objections are
contrary to the requirement in Rule 26(b)(5) that the claim of
privilege be made both expressly and explicitly, and such claims
are insufficient to preserve the privilege.  See, e.g., Universal
City Development Partners, Ltd. v. Ride & Show Engineering, Inc.,
230 F.R.D. 688 (M.D. Fla. 2005).

Tellermate's general assertion that it was producing all
non-privileged documents with respect either to Mr. Mecka or Mr.
Stafford was not sufficiently specific or express to constitute a
claim of privilege as to any withheld documents.  Its failure
ever to list these documents on a privilege log further
compounded the problem.  It would be manifestly unfair (and
contrary both to the letter of Rule 26(b)(5) and its purpose,

which is to counteract the unfairness created by a party's decision to withhold such information without notice, see Advisory Committee Notes to the 1993 Amendments) to permit a party, after failing to make a timely disclosure that it had withheld documents and the reason why it did so, to succeed on a claim of privilege by first asserting the privilege in response to a motion to compel (or under the threat of an impending motion).  For that reason, the Court finds that any claim of privilege as to the remaining documents relating to Mr. Mecka and Mr. Stafford - which claim, in any event, is not factually supported anywhere in the record - has been waived, and the Court will order the production of these documents.

### B.   Salesforce.com Information

The next substantive issue deals with what the parties refer to as the "salesforce.com" information.  Again, the dispute over this information, which relates to the sales efforts of Tellermate's sales employees, concerns neither relevance nor privilege, but simply the issue of whether Tellermate has sufficient control over the information to obligate it to obtain and produce it, rather than forcing the Browns to send a subpoena to salesforce.com.

This is a factual issue.  Tellermate has asserted, in its memorandum, that it neither maintains historical sales information itself nor can it access it; it asserts that it "can only access the information in real time ...."  Memorandum in Opposition, at 3.  It also claims it is contractually prohibited from sharing any such information with third parties.  The Court has reviewed the contract at issue and concludes that nothing in that contract prohibits Tellermate from accessing information stored by salesforce.com for Tellermate's benefit or providing such information to a party in litigation pursuant to a legitimate discovery request, so that issue will not be discussed

further, except to note that any confidentiality concerns can be
addressed by producing the information pursuant to a protective
order, and that "[p]arties cannot create a privilege against
civil discovery by mere written agreement."  Sonnino v.
University of Kansas Hosp. Authority, 2004 WL 769325, *3 (D. Kan.
Apr. 8, 2004).

        Tellermate has made the same assertion about its inability
to access historical sales information in a letter written by its
attorneys, and that letter is a attached to its memorandum.
However, none of the statements it has made are verified in any
way, nor are any contained in an affidavit or declaration.  Thus,
they do not constitute evidence for purposes of this motion.
See, e.g., Schapp v. Executive Indus., Inc., 130 F.R.D. 384, 386
(N.D. Ill. 1990)(party objecting to providing discovery must
submit "a simple affidavit or some other evidence which supports
its objection").  By contrast, Christine Brown signed an
affidavit stating that while she worked for Tellermate, she was
able to access historical sales information from salesforce.com.
The Browns also assert that it defies common sense that
Tellermate would evaluate its sales force on the basis of their
performance but, at the same time, be unable to access the very
information needed for such evaluations.  Again, on this record,
the Court can conclude only that Tellermate does have access to
historical information maintained by salesforce.com, and it will
be directed to produce that information.

                    C.   The Wal-Mart and McDonalds Information

        This information, according to the Browns, relates to
revenues from sales to Wal-Mart, NCR (described as Wal-Mart's
partner), and McDonalds from January 1, 2007 to the present.  The
Browns asked for both the total monthly sales to these entities
and the names of the salespeople credited with those sales.
According to the motion to compel, Tellermate, which has claimed

that it produced this information, contends that it can be found in certain Commission reports, but the Browns dispute the accuracy of those reports and accuse Tellermate of failing to explain "data integrity issues" with the reports.

In its response, Tellermate argues that it produced all such reports as it maintained them.  It appears to characterize the Browns' position as requesting that it create additional documents containing this information, something which it is not obligated to do.  In their reply, the Browns clarify that the documents they received show only sales to Wal-Mart and McDonalds for 2011 and not for the entire period requested, and show no sales to NCR.  Without some explanation of why Tellermate produced documents for only that period of time, and no documents at all relating to NCR, the Court must conclude that this document request has not been responded to fully.

The Browns also raise a related issue with respect to sales figures for other Tellermate customers.  They argue not that Tellermate did not produce documents, but that the documents do not contain the information they seek.  As to this issue, Tellermate is correct that it does not have to create documents which do not exist in order to respond adequately to a document request.  On the other hand, if the information exists in electronic form, it would appear to be "electronically stored information" or ESI, which is just as discoverable as hard-copy documents under the language of Rule 34 (a)(A).  A party cannot resist production of such information simply because it does not exist in hard-copy format.  See, e.g., Burkybile v. Mitsubishi Motors Corp., 2006 WL 3191541 (N.D. Ill. Oct. 17, 2006).

The Court cannot tell from this record which is the case. Clearly, however, if Tellermate does have ESI that is responsive to this request but has not produced it, it has not complied with its discovery obligations.  It may be that a deposition of an IT

person at Tellermate would shed more light on this question and assist the Browns in identifying whether Tellermate does keep the information they seek, in what format it is kept, and whether it can be used to generate the degree of clarity they do not seem to find in the documents produced thus far.  The Court will therefore deny the motion to compel as to these documents without prejudice to the Browns' ability to conduct further discovery on whether additional responsive documents or ESI exists.

### D.   Board of Directors' Meetings

The Browns' position on the minutes of these meetings is simple.  They have received one set of Board minutes.  They find it difficult to believe there are no more.  They have been given agendas of additional meetings.  They ask the Court to order the corporate secretaries of both Tellermate and Tellermate Holding Limited to execute affidavits concerning the absence of additional minutes.

Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate.  Consequently, if plaintiffs such as the Browns "do not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, their motion to compel must fail."  Alexander v. F.B.I., 194 F.R.D. 299, 301 (D.D.C. 2000).  They have not done so.  So long as Tellermate represents, through counsel, and in a written response or supplemental response to the document request at issue, that it has produced all responsive documents on this subject, that is sufficient without the need for further attestation by corporate representatives.  See, e.g,. Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 620 (D.Kan. 2005).  Of course, trial counsel themselves have an affirmative obligation to insure that what their clients tell them is accurate, see Bratka v.

Anheuser-Busch Co., Inc., 164 F.R.D. 448 (S.D. Ohio 1995), and
the Court presumes that they have discharged their duties in this
case accordingly.

### IV. Order

For the reasons stated above, the Browns' second motion to
compel (Doc. 32) is granted as follows. Within 21 days,
Tellermate shall do the following:

1. Produce additional responsive documents relating to the
Ti-X product;

2. Produce additional documents responsive to the request
for documents either constituting or pertaining to evaluation of
other sales representatives, including the documents identified
on pages 3-4 of the Browns' reply memorandum;

3. Provide written verified interrogatory responses from
Tellermate Holdings Limited and Insperity;

4. Produce additional documents relating to Mr. Mecka and
Mr. Stafford which have previously been withheld on grounds of
privilege;

4. Produce the salesforce.com information requested by the
Browns;

5. Produce documents showing sales information for Wal-Mart
and McDonalds for the time period from January 1, 2007 to
December 31, 2010, and for NCR for the entire time period
requested by the Browns; and

6. If not previously done, provide written supplemental
responses to document requests, signed by counsel, to the effect
that all minutes of Board of Directors' meetings requested by the
Browns have been produced.

### V. Procedure on Objections

Any party may, within fourteen days after this Order is
filed, file and serve on the opposing party a motion for
reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.


/s/ Terence P. Kemp
United States Magistrate Judge