IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Brown, et al.,          :
                                   Case No. 2:11-cv-1122
    Plaintiffs,          :
                                   JUDGE JAMES L. GRAHAM
    v.                   :
                                   Magistrate Judge Kemp
Tellermate Holdings Ltd.,         :
    et al.,

    Defendants.          :

OPINION AND ORDER

    This employment case is before the Court by way of plaintiffs Robert A. Brown's and Christine M. Brown's second motion to compel discovery. The motion is fully briefed. For the following reasons, the motion will be granted in substantial part.

I.  Background

    The current dispute centers around certain document requests served by the Browns. Without getting into great detail, the majority of the arguments made in their motion rest on the premise that the Court must compel Tellermate to produce documents it has already agreed to produce because, despite that promise, it has simply failed to do so. The Browns also express some skepticism about certain statements made by Tellermate to the effect that it does not have certain documents or that it is unable to retrieve (and therefore lacks possession or control over) certain documents in the possession of non-parties. For its part, Tellermate argues that it has now produced almost every document requested, and the ones it has not produced are either non-existent, not accessible to it, or protected by some privilege. The Court has attempted to ferret out those areas

where the parties actually appear to have a dispute susceptible of judicial resolution, and those matters will be addressed separately below.

## II. Documents Promised but not Produced

In their motion, the Browns identify a number of documents which they believe Tellermate had agreed to produce but, at least as of the date the motion was filed, had not. They included documents about a certain product (Ti-X), performance evaluations for a number of other Tellermate employees, verified responses to certain interrogatories, documents relating to other employees who alleged discriminatory treatment, expense reports for two other employees, and documents relating to the termination of Michael Stafford's employment. *See* Motion to Compel, at 4-6.

According to Tellermate's responsive memorandum, all of these documents except for certain documents relating to Michael Stafford's termination have been produced. Tellermate suggests that all of these matters are now moot. The only issues Tellermate discusses at any length in its responsive memorandum relate to certain documents kept in a database called salesforce.com, which is maintained by a non-party; sales data for Tellermate customers Wal-Mart and McDonalds; and minutes of meetings of the Tellermate board of directors. As to the first of these categories, Tellermate contends that it cannot produce the documents because it does not have access to them. As to the second and third categories, Tellermate claims that it produced everything it had.

In their reply, the Browns continue to dispute Tellermate's claim that it has produced most of these documents. They do agree, however, that the expense reports they asked for have been produced, and they acknowledge Tellermate's representation that all board of directors' meeting minutes have been turned over (although they remain unconvinced that there are not more such

documents, and they have asked for additional materials relating to board meetings of both Tellermate and its parent, Tellermate Holdings Limited).  They raise various issues about other document productions as well.

It is somewhat difficult for the Court to resolve a dispute about documents which does not take the form of argument about whether they are relevant and discoverable, but whether they have or have not been produced.  Tellermate says they have; the Browns say not.  The documents in question are not before the Court.  The only way the Court can deal with such an issue is to accept Tellermate's apparent concession that it has, and had, no objection to producing the documents, and to place the obligation to do so completely and responsively into the Court's order resolving the motion.  That way, if it subsequently turns out that the documents were not properly produced, there is a court order upon which the Browns can rely.

The same approach must be applied to matters where the Browns have raised specific issues about some of Tellermate's responses, but, again, there is no dispute about the discoverable nature of the documents or other information.  Many of these specifics appear only in the reply brief (the opening memorandum is more general), but they have been properly raised in response to Tellermate's claim that it fully complied with its discovery obligations by either producing the requested documents or answering the interrogatories.  As to these matters, the Court must assume that the facts are as stated in the reply, because Tellermate has not moved for leave to file a surreply or otherwise controverted the Browns' specific claims, and the Court will cover these matters in this order.  This will be reflected in the final section of the order, but will not be further discussed here because there is no substantive matter requiring judicial resolution.  The Court now turns to the substantive

areas of dispute.

### III. Disputed Issues
#### A. The Rule 408 Claim

One of the categories of documents which the Browns asked for related to claims made by other Tellermate employees of discriminatory treatment. As best the Court can determine, records relating to two other employees are at issue here.

First, according to the reply memorandum, an employee named Frank Mecka complained about age discrimination before his employment was terminated in 2009. The Browns attached a letter which Tellermate wrote to Mr. Mecka's attorney in March of 2010 which appears to be a response to that claim. *See* Reply Memorandum, Exhibit 14. That letter refers to two previous letters on the same subject, both written earlier in 2010. The Browns claim these two letters have not been produced; from the state of the record, the Court must reach the same conclusion. Tellermate's memorandum does not specifically identify these letters as ones withheld on grounds of privilege, but it is a fair inference from the record that its more general claim of privilege relating to settlement documents is intended to encompass these letters. Tellermate did attach to its responsive memorandum two letters its counsel wrote which refer to Mr. Mecka. In a February 15, 2013 letter, counsel stated that the Brown's "insistence" that Tellermate had withheld documents relating to Mr. Mecka was "wholly unfounded" and that the Browns should "cease from raising any further issues in this regard." At the same time, in the same paragraph of the letter, Tellermate's counsel suggested that all of the "non-privileged documents" pertaining to Mr. Mecka had been produced, but did not specifically state that any documents had been withheld on privilege grounds. In the second letter, written on March 5, 2013, Tellermate appears to acknowledge that, in fact, the

additional letters identified by the Browns actually exist, but it claimed that they were privileged under Rule 408.  *See* Defendant's Memorandum, Doc. 33, Exhs. A and C.

Second, Tellermate apparently terminated the employment of an employee named Michael Stafford.  It appears to be the Brown's position that he also complained about discriminatory treatment and they are entitled to documents relating to his claim against Tellermate.  The Browns assert that some documents relating to his termination have been produced, but the record does not appear to contain these documents.  One of counsel's letters describes them as multiple versions of separation letters which might have attached drafts of an agreement, and indicates that only one of these drafts was produced.  *See* Motion to Compel, Exh. 2.  Tellermate's March 5, 2013 letter, cited above, also appears to assert a Rule 408 privilege for any drafts of Mr. Stafford's separation agreement, although it qualifies that assertion with some uncertainty about whether any drafts actually exist.

The Browns assert that Tellermate never previously claimed a privilege for any documents relating to either Mr. Mecka's or Mr. Stafford's allegations of discrimination and that Tellermate also produced some documents relating to both of these employees.  They contend, alternatively, that the failure to have asserted this privilege in response to the document request and to list these documents on a privilege log is a waiver, or that the production of some documents which are arguably privileged in the same way is a waiver.  The Court does not have the benefit of any briefing from Tellermate on these arguments, but must assume from the record, which includes Tellermate's privilege logs, that the Browns's statement that none of these documents ever appeared on a privilege log is accurate.  Further, although Tellermate stated generally in its responses to document requests that it was

producing all non-privileged responsive documents, it did not flag these particular documents as being withheld.

There are a number of reasons why Tellermate's claim of the Rule 408 privilege with respect to the Mecka and Stafford documents fails. Fed.R.Civ.P. 26(b)(5) provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged," the party is required to "expressly make the claim" and to provide certain information about the information withheld as described in subsection (A)(ii) of the Rule. The responding party is obligated to make this type of claim as part of its response, and unless the delay in providing the information is "not excessive or unreasonable" the failure to provide the log in a timely fashion waives the privilege. See White v. Graceland College Center for Professional Development & Lifelong Learning, Inc., 586 F.Supp.2d 1250, 1266 (D.Kan. 2008); see also Banks v. Office of the Senate Sergeant-at Arms and Doorkeeper, 226 F.R.D. 113, 117 (D.D.C. 2005)("federal courts are insistent upon the timely production of a privilege log [and] have enforced waivers when the production was not timely"). Further, blanket or boilerplate objections are contrary to the requirement in Rule 26(b)(5) that the claim of privilege be made both expressly and explicitly, and such claims are insufficient to preserve the privilege. See, e.g., Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc., 230 F.R.D. 688 (M.D. Fla. 2005).

Tellermate's general assertion that it was producing all non-privileged documents with respect either to Mr. Mecka or Mr. Stafford was not sufficiently specific or express to constitute a claim of privilege as to any withheld documents. Its failure ever to list these documents on a privilege log further compounded the problem. It would be manifestly unfair (and contrary both to the letter of Rule 26(b)(5) and its purpose,

which is to counteract the unfairness created by a party's decision to withhold such information without notice, see Advisory Committee Notes to the 1993 Amendments) to permit a party, after failing to make a timely disclosure that it had withheld documents and the reason why it did so, to succeed on a claim of privilege by first asserting the privilege in response to a motion to compel (or under the threat of an impending motion).  For that reason, the Court finds that any claim of privilege as to the remaining documents relating to Mr. Mecka and Mr. Stafford - which claim, in any event, is not factually supported anywhere in the record - has been waived, and the Court will order the production of these documents.

B.  Salesforce.com Information

The next substantive issue deals with what the parties refer to as the "salesforce.com" information.  Again, the dispute over this information, which relates to the sales efforts of Tellermate's sales employees, concerns neither relevance nor privilege, but simply the issue of whether Tellermate has sufficient control over the information to obligate it to obtain and produce it, rather than forcing the Browns to send a subpoena to salesforce.com.

This is a factual issue.  Tellermate has asserted, in its memorandum, that it neither maintains historical sales information itself nor can it access it; it asserts that it "can only access the information in real time ...."  Memorandum in Opposition, at 3.  It also claims it is contractually prohibited from sharing any such information with third parties.  The Court has reviewed the contract at issue and concludes that nothing in that contract prohibits Tellermate from accessing information stored by salesforce.com for Tellermate's benefit or providing such information to a party in litigation pursuant to a legitimate discovery request, so that issue will not be discussed

further, except to note that any confidentiality concerns can be addressed by producing the information pursuant to a protective order, and that "[p]arties cannot create a privilege against civil discovery by mere written agreement." <u>Sonnino v. University of Kansas Hosp. Authority,</u> 2004 WL 769325, *3 (D. Kan. Apr. 8, 2004).

Tellermate has made the same assertion about its inability to access historical sales information in a letter written by its attorneys, and that letter is a attached to its memorandum. However, none of the statements it has made are verified in any way, nor are any contained in an affidavit or declaration. Thus, they do not constitute evidence for purposes of this motion. <u>See, e.g., Schapp v. Executive Indus., Inc.</u>, 130 F.R.D. 384, 386 (N.D. Ill. 1990)(party objecting to providing discovery must submit "a simple affidavit or some other evidence which supports its objection"). By contrast, Christine Brown signed an affidavit stating that while she worked for Tellermate, she was able to access historical sales information from salesforce.com. The Browns also assert that it defies common sense that Tellermate would evaluate its sales force on the basis of their performance but, at the same time, be unable to access the very information needed for such evaluations. Again, on this record, the Court can conclude only that Tellermate does have access to historical information maintained by salesforce.com, and it will be directed to produce that information.

        C.   <u>The Wal-Mart and McDonalds Information</u>

This information, according to the Browns, relates to revenues from sales to Wal-Mart, NCR (described as Wal-Mart's partner), and McDonalds from January 1, 2007 to the present. The Browns asked for both the total monthly sales to these entities and the names of the salespeople credited with those sales. According to the motion to compel, Tellermate, which has claimed

that it produced this information, contends that it can be found in certain Commission reports, but the Browns dispute the accuracy of those reports and accuse Tellermate of failing to explain "data integrity issues" with the reports.

In its response, Tellermate argues that it produced all such reports as it maintained them. It appears to characterize the Browns' position as requesting that it create additional documents containing this information, something which it is not obligated to do. In their reply, the Browns clarify that the documents they received show only sales to Wal-Mart and McDonalds for 2011 and not for the entire period requested, and show no sales to NCR. Without some explanation of why Tellermate produced documents for only that period of time, and no documents at all relating to NCR, the Court must conclude that this document request has not been responded to fully.

The Browns also raise a related issue with respect to sales figures for other Tellermate customers. They argue not that Tellermate did not produce documents, but that the documents do not contain the information they seek. As to this issue, Tellermate is correct that it does not have to create documents which do not exist in order to respond adequately to a document request. On the other hand, if the information exists in electronic form, it would appear to be "electronically stored information" or ESI, which is just as discoverable as hard-copy documents under the language of Rule 34 (a)(A). A party cannot resist production of such information simply because it does not exist in hard-copy format. See, e.g., Burkybile v. Mitsubishi Motors Corp., 2006 WL 3191541 (N.D. Ill. Oct. 17, 2006).

The Court cannot tell from this record which is the case. Clearly, however, if Tellermate does have ESI that is responsive to this request but has not produced it, it has not complied with its discovery obligations. It may be that a deposition of an IT

person at Tellermate would shed more light on this question and assist the Browns in identifying whether Tellermate does keep the information they seek, in what format it is kept, and whether it can be used to generate the degree of clarity they do not seem to find in the documents produced thus far. The Court will therefore deny the motion to compel as to these documents without prejudice to the Browns' ability to conduct further discovery on whether additional responsive documents or ESI exists.

### D. Board of Directors' Meetings

The Browns' position on the minutes of these meetings is simple. They have received one set of Board minutes. They find it difficult to believe there are no more. They have been given agendas of additional meetings. They ask the Court to order the corporate secretaries of both Tellermate and Tellermate Holding Limited to execute affidavits concerning the absence of additional minutes.

Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate. Consequently, if plaintiffs such as the Browns "do not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, their motion to compel must fail." Alexander v. F.B.I., 194 F.R.D. 299, 301 (D.D.C. 2000). They have not done so. So long as Tellermate represents, through counsel, and in a written response or supplemental response to the document request at issue, that it has produced all responsive documents on this subject, that is sufficient without the need for further attestation by corporate representatives. See, e.g,. Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 620 (D.Kan. 2005). Of course, trial counsel themselves have an affirmative obligation to insure that what their clients tell them is accurate, see Bratka v.

-10-

Anheuser-Busch Co., Inc., 164 F.R.D. 448 (S.D. Ohio 1995), and the Court presumes that they have discharged their duties in this case accordingly.

## IV.   Order

For the reasons stated above, the Browns' second motion to compel (Doc. 32) is granted as follows.  Within 21 days, Tellermate shall do the following:

1.   Produce additional responsive documents relating to the Ti-X product;

2.   Produce additional documents responsive to the request for documents either constituting or pertaining to evaluation of other sales representatives, including the documents identified on pages 3-4 of the Browns' reply memorandum;

3.   Provide written verified interrogatory responses from Tellermate Holdings Limited and Insperity;

4.   Produce additional documents relating to Mr. Mecka and Mr. Stafford which have previously been withheld on grounds of privilege;

4.   Produce the salesforce.com information requested by the Browns;

5.   Produce documents showing sales information for Wal-Mart and McDonalds for the time period from January 1, 2007 to December 31, 2010, and for NCR for the entire time period requested by the Browns; and

6.   If not previously done, provide written supplemental responses to document requests, signed by counsel, to the effect that all minutes of Board of Directors' meetings requested by the Browns have been produced.

## V.   Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

   This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.


                                    /s/ Terence P. Kemp
                                    United States Magistrate Judge