IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Brown, et al.,            :
                                            Case No. 2:11-cv-1122
        Plaintiffs,                 :
                                            JUDGE JAMES L. GRAHAM
    v.                              :
                                            Magistrate Judge Kemp
Tellermate Holdings Ltd.,           :
    et al.,

        Defendants.

OPINION AND ORDER

I. Introduction

On July 1, 2014, the Court issued an Opinion and Order
concluding that, as the proper disposition of a motion for
default judgment, certain discovery sanctions be imposed on the
Defendants.  Based in part on developments subsequent to the
hearing held on the motion for sanctions (the hearing was held
over the course of three days, ending on February 27, 2014),
Plaintiffs Robert and Christine Brown filed a second motion for
default judgment.  The Tellermate Defendants, and Insperity PEO
Services, L.P. (now represented by separate counsel) filed
separate responses, and the Browns replied to each.  For the
following reasons, the motion will be denied.

II. Background of the Motion

The second motion for default judgment is based on
discovery-related issues which came to light after the first
motion was filed.  They fall into two primary categories:
Defendants' untimely production of additional insurance
information (a disclosure required under Fed.R.Civ.P. 26(a)(1)),
and their production (or withholding) of documents related to
Frank Mecka, a subject also addressed in the Court's prior
Opinion and Order.  The Browns raise other issues as well.  The
Court will summarize the facts about each subject below.

A.  <u>The Insurance Policies</u>

The facts relating to the disclosure of insurance coverage appear to be undisputed.  In their initial disclosures, Defendants identified one insurance policy - issued by Lexington Insurance Company - as potentially providing coverage for the claims made by the Browns.  The Browns' counsel questioned whether that was the only policy, but, after initially receiving no response to that inquiry, he was told by Defendants' counsel that no other policies existed.

Not satisfied with that response, and believing that because the defendants included not only corporations but individual officers and directors, there might be separate coverage for those parties, the Browns' counsel inquired a second time about the existence of other policies.  Despite that request, Defendants did not produce any other insurance policies in that time frame, which was from March through May of 2012.

Nothing further occurred with respect to insurance coverage until after the sanctions hearing.  Then, on May 16, 2014, Defendants' counsel disclosed a second policy issued by Chartis. Defendants have not provided any additional information, requested by the Browns, about communications with their insurers, including whether there has been discussion about the scope or extent of coverage under the policies.

Tellermate and Insperity have provided separate responses to this portion of the motion.  Insperity points out that it is covered only by the Lexington policy, and that it had no duty to disclose the existence of the Chartis policy, which was procured by Tellermate Holdings, Ltd.  For its part, Tellermate (through new counsel) does not take issue with the sequence of facts stated by the Browns, nor does it provide any explanation for the two-plus year delay in identifying the second policy.  Further,

-2-

it does not say why its former counsel, Ms. O'Neil, apparently believed (and consequently represented) that no other policy existed apart from the Lexington policy, or what efforts either she or officials of Tellermate made to respond to the Browns' counsel's repeated requests that she look into the question of whether other policies existed. Tellermate's response to this issue, fairly summarized, is that this is a "no harm, no foul" situation because the Browns cannot show that they were prejudiced by not knowing about the Chartis policy for over two years, and that Tellermate should not be sanctioned "for supplementing its discovery responses by identifying the Chartis policy." Tellermate's Memorandum, Doc. 167, at 16.

B. <u>The Frank Mecka Documents</u>

The prior Opinion and Order contains a great deal of information about the Frank Mecka documents. Those facts are incorporated here by reference. In this section, the Court will recite the facts which have surfaced about the Mecka documents since the prior order was issued.

The short summary of the saga of the Mecka documents is that they keep turning up, and that Defendants, at least through prior counsel, made a number of representations about how many of them there were, all of which turned out to be wrong. First there were two; then there were four; then seven; then thirty; now, an indeterminate number much higher than thirty.

According to the Browns, after the Court issued the series of orders which held that the Mecka documents were discoverable and that any claims of privilege had been waived, Tellermate produced 367 additional Mecka documents. Insperity also produced approximately 15 Mecka documents. Insperity had never prepared a privilege log for any of its Mecka documents, and it appears to concede that it has additional documents relating to Frank Mecka. The Browns asserted in their motion that some additional Mecka

-3-

documents were still being withheld by Tellermate as well, or
that some of the Mecka documents were produced with portions
redacted, apparently based on a claim of privilege as to the
information which was redacted.

Insperity's position on this issue is simple; it contends
that it never received a formal request to produce this specific
set of documents relating to Mr. Mecka.  In its words,
"Plaintiffs never served a request on Insperity asking for
[documents related to Mecka's age discrimination claim against
Tellermate]." Insperity's Memorandum, Doc. 158, at 8.
Consequently, it argues that the Browns are entitled neither to a
default judgment nor even to an order compelling the production
of the Mecka documents in its possession. It also asserts that it
had a good faith belief that it did not have to produce documents
relating to Mr. Mecka's discrimination claims against Tellermate
even if the requests made to it, or the orders on this subject,
actually covered such documents.

Tellermate makes a different response.  It points out that
the 367 additional documents produced are largely made up of
duplicates or pages with no substantive information, and that
only eight of them are of any significance at all.  Tellermate
further represents that all of its Mecka documents have now been
produced, so that there is no basis for a default judgment based
on the earlier withholding of some of these documents.  It
attached additional Mecka documents to its response, most of
which were previously produced or which contain little additional
information.  Finally, it notes that had the subject of any
withheld documents been raised in a Rule 37.1 conference, the
issue would likely have been resolved short of motions practice.

The reply memorandum takes issue with Insperity's assertion
that it was never asked for its copies of Mecka documents.  The
Browns cite to documents requests 23 and 24, which, Insperity

-4-

concedes, were directed to it as well as to Tellermate.  Those requests call for the production of any communications between Insperity and Frank Mecka and any documents relating to any agreements made between either Insperity or Tellermate and Frank Mecka.  The Browns continue to claim that, in prior counsel's communications on this subject, she never distinguished between Tellermate's and Insperity's obligation to produce Mecka documents as Insperity now does, and that the Court's orders on this subject required Insperity, as well as Tellermate, to produce all of its Mecka documents.

As to Tellermate, the reply does not appear to take issue with the fact that Tellermate has now produced all of the Mecka documents.  However, the Browns note that Tellermate continued to withhold such documents after the Court ordered them to be produced, and that the excuse that new counsel had difficulty finding the rest of the Mecka documents among the documents they obtained from prior counsel does not relieve Tellermate of the obligation to have produced them to the Browns at an earlier date – especially since prior counsel had the documents, evidenced by the fact that new counsel produced them from the records they obtained from prior counsel.  The Browns further contend that, now that the documents have been produced, it is evident that many of the claims of privilege, in addition to being untimely, were substantively baseless.  Finally, they refute Tellermate's efforts to place all of the blame for this situation on prior counsel, noting that prior counsel testified unequivocally that her production of additional and undisclosed Mecka documents after having told the Court that none existed was based on new documents which Tellermate disclosed to her.

C. <u>The Insperity "Termination Reason Definitions" Document</u>

The Browns have also raised an issue about Insperity's failure to produce a document which they have obtained from

-5-

another source.  They note that when they were let go, internal
Tellermate documents showed that the reason for that decision was
"layoff."  Defendants have claimed in this case that the Browns
were terminated for performance-related reasons.  However, in an
Insperity document which contains a glossary of terms, "layoff"
is defined as a termination unrelated to an employee's
performance.  The Browns claim to have been told that this
glossary is normally attached to the termination form filled out
when an employee is terminated, but although Insperity produced
their termination forms, it did not produce the glossary.  They
assert this is especially troublesome given the Defendants'
arguments, in their summary judgment motions, that the Browns'
"layoff" was performance-related, and that this withheld document
may be enough to create a material factual issue on that key
point.

Insperity's position, similar to its argument about the
Mecka documents, is that the Browns never served a production
request which covered this particular document.  Insperity also
disputes that the document was attached to the Browns'
termination forms, at least as to the portion of the forms kept
by Insperity.  The form is not contained in the Browns' personnel
files.  Insperity also notes that no issue about the form was
ever raised with their counsel, and that the Court never ordered
its production, so a default judgment based on the non-production
of this form would not be appropriate.  In reply, the Browns cite
to several of their discovery requests which, they claim, are
broad enough to cover this document, including a request for any
documents relating to their claims in this case, to their job
performance, and to the decision to terminate their employment.

D.  <u>Other Documents</u>

Finally, the Browns' motion addresses the production of
other documents for which a claim of privilege has been made.

-6-

According to the motion, most of these documents fall into the category of communications between Insperity and Tellermate concerning the Browns' claims.  They argue that the claims of privilege are likely unfounded because the privilege log describes these documents as "non-attorney communications" and because a review of the Mecka documents which bore the same designation revealed that the claim of privilege was spurious.

Tellermate responds briefly to this argument by noting that there has never been a request for extrajudicial resolution of any issues concerning these documents, and that the Browns have not specifically identified the "hundreds of documents" at issue. It asks the Court to convene a conference among the parties to assist in resolving the matter.  Insperity does not directly address this issue in its response.  The Browns' reply is no more specific than their motion, again identifying only a few of the privilege log entries which they claim are inappropriate.

### III.  Discussion

There is no real dispute about the parameters of the law relating to default judgements awarded as a result of misconduct during discovery.  Such a sanction is specifically permitted by Fed.R.Civ.P. 37(b)(2) as a remedy for a party's failure to comply with a discovery order, and can also be imposed under Rule 37(c) for a party's failure to disclose or supplement information required to be disclosed by Rule 26(a).

The fact that such a sanction is permissible under the Rules, however, does not mean that it should be routinely imposed as part of the Court's management of the discovery process.  As the Court observed in Vogerl v. Elliott, 2010 WL 4683950, *2 (S.D. Ohio Sept 9, 2010), adopted and affirmed 2010 WL 4683948 (S.D. Ohio Nov. 10, 2010),

Entry of a default judgment is obviously the most

> severe sanction available, and should only be
> considered when 1) the disobedient party acted in
> wilful bad faith; 2) the opposing party suffered
> prejudice; 3) the court warned the disobedient party
> that the failure to cooperate could result in a default
> judgment; and 4) less drastic sanctions have been
> attempted. See Grange Mutual Cas. Co. v. Mack, 270 Fed.
> Appx. 372, 376 (6th Cir. 2008).

See also JPMorgan Chase Bank, N.A. v. Neovi, Inc., 2007 WL
1989752 (S.D. Ohio July 9, 2007), citing, inter alia, Taylor v.
Medtronics, Inc., 861 F.2d 980, 986 (6th Cir. 1988).  And, as
this Court said about dismissal as a discovery sanction (which is
the mirror image of a default judgment),

> if a party's failure to provide discovery or to comply
> with a court order is "due to an inability fostered
> neither by its own conduct nor by circumstances within
> its control," and therefore not due to "willfulness,
> bad faith, or any fault" on the part of that party,
> dismissal as a discovery sanction is inappropriate.
> [citation omitted].  On the other hand, where a party
> demonstrates bad faith by failing to meet dates set by
> the Court for compliance with discovery, despite being
> warned about possible sanctions, the Court does not
> abuse its discretion in finding that such "callous
> disregard" of discovery orders justifies dismissal.
> National Hockey League v. Metropolitan Hockey Club,
> Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747
> (1976) (per curiam).

Safety Today, Inc. v. Roy, 2014 WL 1049962, *4 (S.D. Ohio March
17, 2014).  These are the principles guiding the Court's decision
here.

### A.  Bad Faith

The first factor to be considered is whether the disobedient
party acted in bad faith.  That inquiry is complicated by the
fact that the Browns have raised not one, but multiple, claims
about discovery abuses on the part of both Tellermate and
Insperity, and that the issues differ with respect to each.  The

-8-

most likely candidate for a finding of bad faith deals with the
failure to disclose insurance coverage, an issue which relates
only to Tellermate.  There, Tellermate's counsel was repeatedly
questioned about the existence of additional insurance, based on
a reasonable belief that some type of officers' and directors'
liability policy was likely in place, and she repeatedly denied
that such coverage existed.  Tellermate has not explained why she
said that, nor has it explained why it took two years for the
Chartis policy to be identified.  Whether counsel simply failed
to ask the right questions, or whether Tellermate deliberately
provided incorrect answers to her questions, cannot be determined
from the record, but the facts certainly allow an inference that
either Tellermate or its counsel acted in bad faith.  Coupled
with the Court's prior conclusions about counsel's and
Tellermate's conduct with respect to the salesforce.com
documents, this appears to be yet another instance of grossly
deficient participation in the discovery or disclosure process
that defies explanation.

It is not so clear that bad faith exists with respect to the
other issues, however.  Certainly, the continued expansion of the
universe of Mecka documents is problematic, and, again, the only
evidence on that subject is prior counsel's testimony that she
was relying on Tellermate's representations about those
documents.  The efforts to locate and produce all of the Mecka
documents after this Court overruled the claims of privilege were
not optimal, but it now appears they have all been produced, and
the Court accepts the Defendants' statements that most of the
previously-unproduced documents are not substantive in nature.
And while the Court believes Insperity has read the requests for
Mecka documents served on it too narrowly, and that prior counsel
did not do a good job of differentiating between documents in
Tellermate's possession and those controlled by Insperity, there

is at least arguable good faith behind Insperity's decision not to produce some Mecka documents.

The Court is troubled by Insperity's failure to produce the glossary of terms, however.  That document is certainly relevant to the Browns' claims, particularly when Defendants have consistently taken the position that the "layoff" was a performance-related termination.  It is difficult to argue that a document which provides meaning to terms used in other relevant and discoverable documents is not itself relevant; certainly, it has a bearing on how the producing party understood those terms, and the fact that it was not physically attached to the Browns' termination forms does not make it any less relevant.  The fact that it should have been produced, however, is not tantamount to Insperity's disregard of a court order directing its production - there does not appear to be any order which can be read broadly enough to cover that particular document - so, as more fully discussed below, this particular matter does not seem to provide a basis for imposing an extremely harsh sanction.

Finally, as to other documents withheld on grounds of privilege, there is simply not enough information in the record to allow the Court to determine if the documents were withheld in bad faith.  Without a more particularized identification of the documents, a better explanation of the basis of Tellermate or Insperity's claims of privilege, and, perhaps, an *in camera* review, the Court cannot make an informed decision about the reasons why these documents appear on the privilege log.

### B.  Prejudice

The next factor in determining whether to grant a default judgment is prejudice to the moving party.  Again, due to the number of different matters raised in the motion, this factor does not lend itself to a simple analysis.  And, at this stage of the case, given that the trial date has been vacated and the

summary judgment proceedings have been put on hold for reasons
mostly unrelated to the issues raised in the default judgment
motion, the fact that most of the issues raised by the Browns -
particularly the insurance policy question, the production of the
Mecka documents, and the Insperity glossary - have been resolved
cuts against a finding of any ongoing prejudice.

No doubt, the failure to produce the glossary could have
been prejudicial had it not been available to the Browns for use
in summary judgment proceedings.  Further, the Court is not
prepared to say that a party can never be prejudiced by the
failure to disclose available insurance coverage, since that
disclosure is mandated at the early stages of every case.
However, any prejudice here, where Defendants have apparently
never made an offer approaching the limits of the policy which
was disclosed, and the Browns made a demand within those limits
which was rejected, is minimal.  There has been no clear showing
how the struggle to get the Mecka documents identified and
produced has affected the Browns apart from the time and expense
they have incurred to force Defendants to comply with their
requests and the Court's orders. In short, there has been some
prejudice, especially in the form of cost, but that can be
remedied through an award of expenses, if appropriate.  Any
prejudice from these matters does not begin to approach the level
of prejudice caused by the mishandling of the salesforce.com
issue, which has led to an unknown amount of alteration or
spoliation of evidence and which was accompanied by an
unjustifiable lack of diligence and candor on the part of
counsel, the clients, or both.

C.  Additional Factors

Given that the Court is unable to find a significant amount
of bad faith or prejudice here, a discussion of the two remaining
factors is largely academic.  The defendants in this case are

-11-

certainly on notice that they have been less than forthcoming with discovery, but as to the particular matters raised in the Browns' second motion, they have not been specifically warned of the potential for default. If any sanctions are needed (and it is not clear what sanctions might be appropriate other than some cost-shifting), lesser sanctions will suffice. Consequently, the Court does not believe that granting a default judgment is warranted.

That is not to say, however, that the matters raised in the motion for default judgment should not be considered by the Court at all, especially as it relates to the pending review of the Opinion and Order of July 1, 2014. Some of them trace additional developments about matters already addressed in that order, while others - like the failure to disclose the second insurance policy - reflect a fact pattern which seems to have parallels in the conduct described in that order. It will, of course, be up to the District Judge to determine how much of this additional evidence he wishes to consider, even as context, but nothing in this order should be read to exonerate the Defendants from all blame as to the issues raised in the second motion for default judgment. The Court has simply determined that, based on the facts as represented in the motion and as clarified by the responses, a default judgment is not warranted at this juncture.

IV. <u>Order</u>

For the following reasons, the Second Motion for Default Judgment (Doc. 141) is denied, except that Insperity is ordered to produce any additional documents in its possession relating to Frank Mecka within 14 days of the date of this order.

V. <u>Motion for Reconsideration</u>

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A),

Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a).  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge

-13-