IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Brown, et al.,

              Plaintiffs,                           Case No. 2:11-cv-1122

    v.                                    Judge Graham

Tellermate Holdings Ltd., et al.,          Magistrate Judge Kemp

              Defendants.

## OPINION & ORDER

The course of this litigation is an appalling example of discovery run amok. This straightforward age discrimination case has spawned nearly three years of collateral litigation over discovery, which has consumed enormous amounts of the resources of the parties and this Court without materially advancing the goal of fair and efficient preparation for trial. It is the Court's intention to resolve these collateral disputes expeditiously and put this case on course for trial before the end of the year.

## I.      Background

This matter is before the Court on a number of discovery-related objections and motions. The Plaintiffs in this case are Robert and Christine Brown, former salespersons for Defendant Tellermate. The Defendants are Tellermate Holdings Ltd.; Tellermate, Inc.; Paul Rendell; David Lunn; Gareth Davies; Edgar Biss; John Pilkington; Debra Elliott (collectively, Defendant Tellermate); and Insperity PEO Services, L.P. (Defendant Insperity). Defendant Tellermate offers cash management products and services. Defendant Insperity is a human resources outsourcing company.

1

In August 2011, Defendant Tellermate terminated the Plaintiffs' employment. Several months after their termination, the Plaintiffs commenced this action for age discrimination. As the Magistrate Judge diplomatically put it, "[d]iscovery did not go smoothly." July 1, 2014 Op. & Order at 2, doc. 96. The parties repeatedly clashed over discovery matters, necessitating the Magistrate Judge's frequent intervention. Now before the Court are the Defendants' objections to the Magistrate Judge's award of discovery sanctions against the Defendants and the Plaintiffs' objections to the Magistrate Judge's denial of their Second Motion for Default Judgment.

## II. Standard of Review

"The nature of the matter considered by the magistrate judge, dispositive or nondispositive, determines the standard of review by the district court." Griffin v. Bank of Am., N.A., No. 2:14-CV-02335-JTF, 2015 WL 3892058, at *1 (W.D. Tenn. June 24, 2015) (citing Fed. R. Civ. P. 72(b)(3)). When reviewing a magistrate judge's nondispositive ruling, the district court applies a "clearly erroneous or contrary to law" standard of review. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). In contrast, the district court reviews *de novo* a magistrate judge's ruling on a dispositive matter. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

An award of attorneys' fees for discovery misconduct is not dispositive of a claim or defense and is therefore reviewed under Rule 72(a)'s "clearly erroneous or contrary to law" standard. Estates of Ungar & Ungar ex rel. Strachman v. Palestinian Auth., 325 F. Supp. 2d 15, 25 (D.R.I. 2004) aff'd sub nom. Ungar v. Palestine Liberation Org., 402 F.3d 274 (1st Cir. 2005); see also Baker v. Peterson, 67 F. App'x 308, 311 (6th Cir. 2003) (per curiam) (citing Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458 (10th Cir. 1988), for the proposition that "the magistrate's imposition of attorney fees as a discovery sanction is reviewed under the 'clearly

erroneous or contrary to law' standard"); <u>Zang v. Zang</u>, No. 1:11-CV-884, 2014 WL 5426212, at *4 (S.D. Ohio Oct. 22, 2014) (finding that "[w]ith few exceptions, orders concerning pre-trial discovery matters including the imposition of monetary sanctions for violations under Rule 37 are considered to be non-dispositive" and awarding attorneys' fees and costs as a sanction for discovery misconduct). The Court reviews the Magistrate Judge's award of attorneys' fees under the clearly erroneous or contrary to law standard of review.

The evidentiary sanction imposed by the Magistrate Judge precludes the Defendants from "from using any evidence which would tend to show that the Browns were terminated for performance-related reasons." <u>Id.</u> at 45. In the Court's view, whether this sanction is "dispositive of a . . . defense," Fed. R. Civ. P. 72(a), for the Defendants, and thus subject to *de novo* review, is a close call. While this sanction precludes the Defendants from asserting a potential non-discriminatory reason for the Plaintiffs' termination, it does not preclude the Defendants from asserting other non-discriminatory reasons for the Plaintiffs' termination. Thus, it does not preclude the defense that the Plaintiffs were terminated for non-discriminatory reasons. Therefore, the Court reviews the evidentiary sanction under the clearly erroneous or contrary to law standard.

## III.    Discussion

The Defendants have objected to the Magistrate Judge's July 1, 2014 Opinion and Order imposing sanctions. The Plaintiffs have objected to the Magistrate Judge's March 30, 2015 Opinion and Order denying their Second Motion for Default Judgment. The Court will address each set of objections separately.

A.    *The Plaintiffs' First Motion for Default Judgment*

In the fall of 2013, the Plaintiffs filed a Motion for Default Judgment (doc. 60) and a Motion for Sanctions (doc. 65) based on their belief that the Defendants had engaged in a pattern of obfuscation and misconduct related to discovery. After the parties briefed the motions, the Magistrate Judge held a three-day evidentiary hearing. At the conclusion of that hearing, the Magistrate Judge offered the parties the opportunity to submit additional briefing, but the parties declined to do so.

1.    The Magistrate Judge's July 1, 2014 Opinion and Order

The Magistrate Judge issued his Opinion and Order ruling on the Plaintiffs' motions on July 1, 2014. He identified three areas in which the Defendants and their counsel, of the law firm Calfee, Halter & Griswold LLP (Calfee), failed to live up to their discovery obligations: (1) the preservation and production of salesforce.com records; (2) the production of records concerning a previous age discrimination claim against the Defendants (the Frank Mecka documents); and (3) the production of 50,000 pages of employee performance-related documents and the designation of those documents as "Attorneys' Eyes Only." A summary of each of these issues is necessary to understand the objections now before the Court.

*Salesforce.com Records:* Salesforce.com provides services and products related to "customer relationship management." Defendant Tellermate contracted with Salesforce.com to provide customer relationship management application for the use of Defendant Tellermate's sales employees.  Each salesperson had their own account in which they could record a variety of sales activities, including: customer contacts, potential sales leads, and information concerning actual sales.

During discovery, the Plaintiffs requested that the Defendant Tellermate produce salesforce.com reports for the Plaintiffs and their co-workers. The Plaintiffs sought these records to help establish their contention that their sales performance was comparable to that of younger employees who were not terminated.

Defendant Tellermate nonetheless asserted that it could not produce the salesforce.com reports requested by the Plaintiffs because: (1) they did not maintain hard copies of salesforce.com reports; (2) they could not access historical salesforce.com data and could only access salesforce.com in real time; (3) they were contractually prohibited from turning over salesforce.com data to third parties; and (4) salesforce.com, rather than the Defendant Tellermate, had possession and control over the salesforce.com data that the Plaintiffs requested. These justifications were either false or irrelevant as demonstrated by the testimony of the Defendant Tellermate's employees. See July 1, 2014 Op. & Order at 7–11, 12–13. Moreover, the plain language of the contract between the Defendant Telelrmate and Salesforce belied many of Defendant Tellermate's arguments. See id. at 17.

The lengthy battle over the production of the salesforce.com records was compounded by the preservation, or lack thereof, of those same records. Following the Plaintiffs' termination, Defendant Tellermate's salesforce.com administrators had the ability to access the salesforce.com records, including those of the Plaintiffs, and change or delete information in those accounts. Id. at 11. Despite their receipt of the Plaintiffs' preservation letter at the beginning of this litigation, Defendant Tellermate did not take any steps to preserve the contents of the salesforce.com database. Id. at 15–16. Defendant Tellermate's failure to preserve the records may have occurred because of their mistaken belief that the salesforce.com kept backup records of information entered into salesforce.com applications. Id. at 15. However, as

Defendant Tellermate later determined, salesforce.com did not backup data in salesforce.com applications beyond three to six months. Id. at 16.

The Plaintiffs' forensic review of Defendant Tellermate's salesforce.com records revealed the problem with this lax approach to Defendant Tellermate's discovery obligations. The forensic expert explained that it was not possible to determine whether, in the interim between the Plaintiffs' termination and the forensic review of the salesforce.com records, anyone changed or deleted the information therein. Id. at 16. Consequently, any data contained in the salesforce.com application that is older than three to six months is inherently unreliable. Id.

*Frank Mecka Documents*: The Magistrate Judge then turned to the Defendants' failure to produce documents concerning Frank Mecka. Mecka was a former salesperson for the Defendants. After his termination, he alleged that he was discharged because of his age. Mecka settled his claim of age discrimination with the Defendants. The Plaintiffs requested that the Defendants produce a variety of documents relating to Mecka, including the agreement settling his claim. Although the Defendants initially objected to the Plaintiffs' request for production of documents relating to that agreement, the Defendants agreed to produce the relevant, non-privileged documents. Id. at 19. On February 15, 2013, the Defendants produced "a few documents," stating that those were all of the non-privileged documents related to Mecka. Id. At that point, the Defendants had not created a privilege log with respect to any of the alleged privileged Mecka documents. Id.

In April 2013, the Magistrate Judge found that the Defendants had waived their claim of privilege with respect to the Mecka documents by failing to create a privilege log and ordered the Defendants to produce the relevant documents. Id. This Court overruled the Defendants' objections to the Magistrate Judge's ruling. See July 29, 2013 Order, doc. 46. Prior to the

Magistrate Judge's ruling, the Defendants had represented that only two documents were being withheld as a matter of privilege. July 1, 2014 Op. & Order at 19–20. Subsequent events revealed this representation to be false. Following this Court's Order denying the Defendants' objections, the Defendants' produced more than two Mecka documents but also produced a new privilege log, listing more than 30 Mecka documents as subject to the attorney-client privilege. Id. at 20. The Defendants had not previously made any claim of attorney-client privilege. Id. at 20.

*Document Dump and Attorneys' Eyes Only Designation*: Finally, the Magistrate Judge turned to the Defendants' handling of discovery with respect to documents concerning the performance of the Plaintiffs' co-workers. Initially, the Defendants represented that the number of such documents was "unlimited." Id. at 21. However, in response to the Plaintiffs' motion to compel, contrary to their earlier statement, the Defendants represented that only about 20 such documents existed. Id. With limited evidence before him, the Magistrate Judge directed the Defendants to produce any additional performance evaluation documents. Id. at 21–22.

Following the issuance of the Magistrate Judge's order, the Defendants notified the Plaintiffs that their request for performance evaluation-related documents encompassed 35,000 to 40,000 records. Id. at 23. After the parties failed to agree on search terms to potentially limit the number of records that needed to be produced, the Defendants produced 50,000 pages of documents. Id. at 22–23. Most of these documents were irrelevant and nonresponsive to the Plaintiffs' discovery request, which the Defendants justified, in part, as a result of the limited time in which they had to produce the documents in question. Id. at 24.

Further, the Defendants marked almost all of these documents as "Confidential - Attorneys' Eyes Only" (AEO). Id. The Magistrate Judge's prior protective order had set out the narrow terms under which such a designation could be applied. Id. at 24–25. According to the

Defendants, they viewed Plaintiff Robert Brown as a business competitor, which justified their use of the AEO designation. Id. at 25. The parties' negotiations over these designations failed. Id. at 25–26. While acknowledging that their production of these documents was overinclusive, the Defendants nonetheless failed to conduct a more precise review of the documents in question to determine whether they were responsive or whether the AEO designation was appropriate. Id. at 26–27.

*The Magistrate Judge's Sanctions*: In his Opinion and Order of July 1, 2014, the Magistrate Judge denied the Plaintiffs' Motion for Default Judgment and found instead that lesser sanctions were appropriate. Considering each of the discovery issues before him, the Magistrate Judge assigned fault to both the Defendants and their counsel. Id. at 31–41. With respect to the salesforce.com issue, the Magistrate Judge found that the Defendants failed to provide full, truthful, and appropriate discovery responses, id. at 31–32, and that the Defendants' counsel failed to conduct a reasonable investigation of the Defendants' ability to produce the salesforce.com records, id. at 32–34. As a result of these failings:

> The Browns did not get this discovery timely; they were forced, unnecessarily, to spend time and money trying to resolve the matter informally, with the Court, and, eventually, by way of motions practice; and by the time they got it, due to Tellermate's failure to preserve the evidence properly, they had no way of knowing how much of it was still reliable and accurate.

Id. at 32. Turning to the remaining discovery issues, the Magistrate Judge found the Defendants' and their counsel's handling of the Frank Mecka documents and the performance evaluation-related documents were part of a larger pattern of misconduct. Id. at 37–41.

In support of his decision to impose sanctions, the Magistrate Judge cited Federal Rules of Civil Procedure 26(g)(3), 37(a)(3)(c)(B)(iv), 37(b)(2); 28 U.S.C. § 1927; the Court's inherent authority; and the common law related to the spoliation of evidence. Id. at 41. The Magistrate

Judge concluded that an award of attorneys' fees and expenses to the Plaintiffs' for all motions practice related to the salesforce.com records, Frank Mecka documents, and performance evaluation-related documents was appropriate. Id. at 42, 45–46. The Magistrate Judge ordered the Defendants and their counsel to jointly pay those fees and expenses. Id. at 46.

The Magistrate Judge further found that the severity of the Defendants' misconduct during the discovery process justified a further sanction, holding that the Defendants would be "preclude[d] . . . from using any evidence which would tend to show that the Browns were terminated for performance-related reasons." Id. at 45. The Magistrate Judge explained his reasoning as follows:

> The Browns need evidence to make out their claim that performance issues were a pretext for age discrimination. Because Tellermate professes not to have done formal performance evaluations of its representatives, the most comprehensive evidence of their performance (and the Browns' own performance) appears to be the salesforce.com information. But that information cannot be trusted, and even a forensic computer expert has no way to detect what changes, deletions, or additions were made to the database on an historical basis. Consequently, even a sanction like forcing Tellermate to pay for the entire cost of a comprehensive examination of the database and an extraction of all relevant performance-related information would do nothing to guarantee that the information was reliable. And precluding Tellermate from contesting the accuracy of the information would not help, either, because any introduced inaccuracies in the database—with their timing and content unknown and unknowable—might actually favor Tellermate.
>
> . . .
>
> This sanction is commensurate with the harm caused by Tellermate's discovery failures, and is also warranted to deter other similarly-situated litigants from failing to make basic, reasonable inquiries into the truth of representations they make to the Court, and from failing to take precautions to prevent the spoliation of evidence. It serves the main purposes of Rule 37 sanctions, which are to prevent parties from benefitting from their own misconduct, preserving the integrity of the judicial process, and deterring both the present litigants, and other litigants, from engaging in similar behavior. It is also an appropriate response to the spoliation of evidence.

Id. at 44–45 (internal citations omitted).

After filing their objections to the Magistrate Judge's Opinion and Order, the Defendants terminated Calfee's representation and retained new counsel. Whereas the Defendants previously had joint representation, Defendant Tellermate and Defendant Insperity retained separate law firms to represent their individual interests. See Notices of Appearance, docs. 97, 98, 107, 108, 112, 115–121). Due to its joint liability with Defendant Telelrmate for the Plaintiffs' attorneys' fees and expenses, Calfee continued its involvement in this case as an interested party.

### 2.    The Court's Analysis

Defendant Tellermate makes numerous objections to the Magistrate Judge's Opinion and Order. As an initial matter, Defendant Tellermate argues that Rule 37(b)(2) sanctions cannot be imposed in this case because it did not violate a Court order. Def. Tellermate's Objections at 25–27, doc. 99. Rule 37(b)(2) provides that a court may sanction a party for "fail[ing] to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." In his July 1, 2014 Opinion and Order, the Magistrate Judge cited Rule 37(b)(2) as one of many bases for his sanctions order.

The Magistrate Judge's reliance on Rule 37(b)(2) was appropriate. Defendant Tellermate and its counsel violated the Magistrate Judge's April 3, 2013 Opinion and Order (doc. 37) granting the Plaintiffs' motion to compel. In his Opinion and Order, the Magistrate Judge instructed Defendant Tellermate to "[p]roduce additional documents *responsive* to the request for documents either constituting or pertaining to evaluation of other sales representatives." April 3, 2013 Op. & Order at 11, doc. 37 (emphasis added). In response to this Order, Defendant Tellermate produced over 50,000 documents, many of which counsel for Defendant Tellermate conceded were not responsive to the Plaintiffs' request for production. See July 1, 2014 Op. &

Order at 24. By providing nonresponsive documents, Defendant Tellermate violated the Magistrate Judge's April 3, 2013 Opinion and Order. Defendant Tellermate's violation of that Order was exacerbated by its failure to cure its nonresponsive production prior to the Magistrate Judge's July 1, 2014 Opinion and Order.

Further, the Magistrate Judge's April 3, 2013 Opinion and Order directed Defendant Tellermate to produce additional documents relating to Mr. Mecka, which had previously been withheld on grounds of privilege. April 3, 2013 Op. & Order at 11. This Court denied Defendant Tellermate's objections to the Magistrate Judge's finding that Defendant Tellermate waived its claim of privilege for these documents. See July 29, 2013 Order, doc. 46. Despite this ruling, "Tellermate did not produce these additional documents." July 1, 2014 Op. & Order at 21. This too violated the Magistrate Judge's April 3, 2013 Opinion and Order.

Finally, "attorney's fees and costs, as well as other appropriate sanctions, may be awarded under Rule 37(b)(2) for a violation of a protective order." Trenado v. Cooper Tire & Rubber Co., 274 F.R.D. 598, 600–01 (S.D. Tex. 2011) (collecting cases). See also Field Turf USA, Inc. v. Sports Const. Grp., LLC, No. 1:06 CV 2624, 2007 WL 4412855, at *4 (N.D. Ohio Dec. 12, 2007) (citing Rule 37(b)(2) and finding that "[t]he Court has the power to dismiss a claim or enter judgment against a party for failure to comply with discovery orders, including protective orders"); but see Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1321–23 (11th Cir. 2001) (holding that Rule 37(b)(2) does not permit a district court to impose sanctions for a violation of a protective order); Coleman v. Am. Red Cross, 23 F.3d 1091, 1098 (6th Cir. 1994) (Ryan, J., dissenting) ("In my judgment, the majority's apparent conclusion that neither Rule 41(b) nor Rule 37(b) authorize the dismissal sanction the district court imposed misses the point, because neither Rule 41(b) nor Rule 37(b) are the proper bases for resolving this case. This is a

case about the sanctions that are available to a district court for the violation of its protective order. Rules 41(b) and 37(b) have nothing to do with protective orders."). Here, Defendant Tellermate and its former counsel's massive production of 50,000 documents in response to the Plaintiffs' request for personnel evaluations, most of which had nothing to do with personnel evaluations, violated the Magistrate Judge's April 18, 2013 Protective Order (doc. 39). Defendant Tellermate and its counsel designated 99% of those 50,000 documents with the "Confidential – Attorneys Eyes Only," the most protective designation available under the Magistrate Judge's Protective Order. July 1, 2014 Op. & Order at 24. But as the Magistrate Judge noted, Defendant Tellermate lacked a basis for assigning this designation to many of these documents, such as a picture of baby. Id. at 25–26. Defendant Tellermate's inappropriate use of the "Confidential – Attorneys Eyes Only" designation violated the Magistrate Judge's Protective Order and provides an additional basis for the imposition of Rule 37(b)(2) sanctions.

Because Defendant Tellermate and its counsel "fail[ed] to obey an order to provide or permit discovery," Rule 37(b)(2) sanctions are available in this case.

Pursuant to Federal Rule of Civil Procedure 37, the Court has discretion to impose sanctions against a party for failure to comply with discovery orders. Fed. R. Civ. P. 37(b)(2). Courts consider a four factor test to determine whether the imposition of extreme sanctions under Rule 37 is appropriate:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997).

In addition to its authority under the Federal Rules of Civil Procedure, "[a] district court has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders." Youn v. Track, Inc., 324 F.3d 409, 420 (6th Cir. 2003) (collecting cases). "Although a court ordinarily should rely on the Rules rather than the inherent power," the Sixth Circuit recognizes that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Metz v. Unizan Bank, 655 F.3d 485, 491 (6th Cir. 2011).

*Willfulness, Bad Faith, or Fault*: Defendant Tellermate asserts that its failure to cooperate in discovery was not due to bad faith, willfulness, or fault. Instead, Defendant Tellermate argues, any misrepresentations made to the Court were a result of miscommunication between the Defendants and their former counsel. Def. Tellermate's Objections at 32–34.

In Barron v. Univ. of Michigan, the Sixth Circuit elaborated on what is required to support a finding of willfulness, bad faith, or fault:

> whether the party's failure is due to willfulness, bad faith, or fault . . . requires a clear record of delay or contumacious conduct. Contumacious conduct is behavior that is perverse in resisting authority and stubbornly disobedient. The [party's] conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.

— F. App'x —, 2015 WL 3450075, at *3 (6th Cir. May 29, 2015) (internal citations and quotation marks omitted). Under this definition, the Court has little trouble concluding that Defendant Tellermate's and its former counsel's actions during the discovery process were due to a combination of gross negligence and bad faith. The actions of Defendant Tellermate and its former counsel significantly delayed the prosecution of this case and demonstrated a reckless disregard for their obligations to the Court.

The Magistrate Judge's finding that Defendant Tellermate and its former counsel made numerous false and misleading representations to the Plaintiffs and the Court regarding their

ability to produce the salesforce.com records is well supported by the record. See July 1, 2014 Op. & Order at 7–8, 8–9 (identifying false and misleading statements made by Defendant Tellermate and its former counsel to the Plaintiffs regarding their ability to produce the salesforce.com records); id. at 8 (identifying false statements made by Defendant Tellermate and its former counsel to the Court regarding their ability to produce the salesforce.com records). Throughout the discovery process, Defendant Tellermate and its former counsel incorrectly asserted that the salesforce.com records belonged to Salesforce, and not Defendant Tellermate, and therefore Defendant Tellermate could not produce those records. Moreover, former counsel for Defendant Tellermate argued that Defendant Tellermate's contract with Salesforce prohibited Defendant Tellermate from producing the salesforce.com records despite the plain language of the contract to the contrary.

Likewise, with respect to the Frank Mecka documents, Defendant Tellermate and its former counsel: failed to produce discoverable documents in a timely manner; misled the Plaintiffs and the Court about the number of discoverable documents; and claimed that many of the documents in question were privileged without creating any privilege log as required by the Rules. Moreover, with respect to the performance evaluation documents sought by the Plaintiffs, Defendant Tellermate and its former counsel produced more than 50,000 documents, the vast majority of which were irrelevant to the discovery requested by the Plaintiffs. Despite the overbroad production, counsel for Defendant Tellermate designated almost all of them as "Confidential – Attorneys' Eyes Only." Former counsel for Defendant Tellermate took little, if any action, to cure these production deficiencies.

In responding to discovery requests, the Court expects parties to provide accurate information to their counsel and opposing parties. However, "trial counsel must exercise some

degree of oversight to ensure that their client's employees are acting competently, diligently and ethically in order to fulfill their responsibility to the Court." Bratka v. Anheuser–Busch Co., 164 F.R.D. 448, 461 (S.D. Ohio 1995). The Magistrate Judge's finding that Defendant Tellermate and its former counsel did not fulfill their respective obligations is well supported by the record.

The record supports the finding that Defendant Tellermate's and its former counsel's failure to cooperate with discovery was a result of gross negligence[1] and bad faith and not simple negligence resulting from miscommunication. The record further supports the finding that Defendant Tellermate's failures, and those of its former counsel, were part of an ongoing pattern of discovery misconduct and that their actions were in bad faith.

*Prejudice*: Defendant Tellermate maintains that the Plaintiffs have suffered no prejudice as a result of its misconduct because the Plaintiffs "received the discovery that they sought." Def. Tellermate's Objections at 34. The Court disagrees. Defendant Tellermate's argument is inconsistent with the Sixth Circuit's definition of prejudice. As the Sixth Circuit has explained, in the context of Rule 37, a litigant is prejudiced by an opposing party's "dilatory conduct if the [litigant] is 'required to waste time, money, and effort in pursuit of cooperation which [the opposing party] was legally obligated to provide.' " Carpenter v. City of Flint, 723 F.3d 700, 707 (6th Cir. 2013) (quoting Harmon v. CSX Transp., Inc., 110 F.3d 364, 368 (6th Cir. 1997)). That the Plaintiffs ultimately received the salesforce.com records, Mecka documents, and personnel evaluations ignores the fact that the Plaintiffs were required to expend "time, money, and effort" to compel the production of these documents that Defendant Tellermate was legally obligated to provide in the first place. This, in and of itself, satisfies the prejudice standard.

---

[1] In the context of Rule 37, gross negligence is sufficient to establish fault on the part of a sanctioned party. Bratka, 164 F.R.D. at 460.

Further, Defendant Tellermate's argument ignores the more fundamental prejudice suffered by the Plaintiffs' in this case. As thoroughly explained by the Plaintiffs' forensic expert at the evidentiary hearing before the Magistrate Judge, Defendant Tellermate's failure to preserve the salesforce.com records has made it impossible to know whether the salesforce.com records have been altered since the Plaintiffs' termination. In short, the salesforce.com records are now unreliable and therefore of little evidentiary value to the Plaintiffs.

*Notice*: Defendant Tellermate also argues that the imposed sanctions came without warning and are therefore improper. Def. Tellermate's Objections at 34. According to Defendant Tellermate:

> [i]n granting the Browns' Motion to Compel, this Court did not warn Defendants that they would be faced with defense preclusion sanctions. Nor did this Court conclude at that time that Defendants' opposition to the Browns Motion was "substantially unjustified" so as to justify an attorney's fee sanctions under Rule 37 or warn Defendants that they may be liable in the future for such fees (or any other sanctions) based on their opposition.

Id.

The Court notes some tension in Sixth Circuit case law as to whether notice is an absolute requirement prior to the imposition of extreme sanctions. In Peltz v. Moretti, the Sixth Circuit reversed the district court's Rule 37(b) sanctions because, in part, the district court failed to provide the defendants with notice that failure to cooperate in discovery could lead to those sanctions. 292 F. App'x 475, 480 (6th Cir. 2008). The Peltz court observed that "[t]he district court in this case never explicitly warned the parties about the possibility and severity of sanctions" and emphasized that "[c]lear notice is required" prior to the imposition of such sanctions. Id.

Other Sixth Circuit decisions suggest a different view of the notice requirement. "There is no magic-words prerequisite to dismissal under Rule 37(b)," Universal Health Grp. v. Allstate

Ins. Co., 703 F.3d 953, 956 (6th Cir. 2013), and no one factor is dispositive under the Rule 37(b) analysis, United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002). Where a court finds that a party acted in bad faith, notice is not required. See Harmon v. CSX Transp., Inc., 110 F.3d 364, 367 (6th Cir. 1997) ("Where a plaintiff has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal *unless the derelict party has engaged in bad faith or contumacious conduct*." (internal quotations and citation omitted) (emphasis added)).

Here, it is unclear whether Defendant Tellermate was put on notice by the Court that its failure to comply with discovery orders could lead to the imposition of extreme sanctions. But even assuming that it was not, the Court agrees with the Magistrate Judge's finding that Defendant Tellermate and its former counsel acted in bad faith, limiting the import of the notice requirement in the context of Rule 37(b) sanctions, see id. Moreover, even absent the finding of bad faith, no one factor under the Rule 37(b) sanctions analysis is dispositive, Reyes, 307 F.3d at 458, and "prior warning is not indispensable" to the imposition of such sanctions, Fharmacy Records v. Nassar, 379 F. App'x 522, 524 (6th Cir. 2010) (citations omitted).

Here, the Magistrate Judge issued an order granting the Plaintiffs' motion to compel. "If there has been an order compelling discovery, . . . it is not ordinarily necessary (although it may be desirable) that the court have warned the sanctioned party in advance of the risk of serious sanctions." 8B Charles A. Wright and Arthur R. Miller, Fed. Prac. & Proc. § 2289 (3d ed. 2015). The Plaintiffs then filed a motion for default judgment and a motion for sanctions, putting Defendant Tellermate on notice that the most severe sanction available under Rule 37(b), default judgment, could be imposed. The Magistrate Judge held a three-day evidentiary hearing at which Defendant Tellermate and its former counsel had ample opportunity to present evidence

explaining their conduct. At the end of the hearing, the Magistrate Judge made clear that he would be imposing sanctions on Defendant Tellermate and that the only remaining question was how serious those sanctions would be. He offered Defendant Tellermate the opportunity to submit additional briefing, but it declined to do so. While the Plaintiffs' motions may not have provided *prior* notice that a failure to cooperate in discovery could lead to severe sanctions, "a motion to dismiss or for default is sufficient to put the offending party on notice that such a sanction is being considered." Field Turf USA, Inc., 2007 WL 4412855, at *4 (citing Reyes, 307 F.3d at 458).

*Consideration of Lesser Sanctions*: Defendant Tellermate argues that less drastic sanctions are available. In its view, the Court should choose to extend the discovery deadline, rather than the preclusion sanction imposed by the Magistrate Judge. Def. Tellermate's Objections at 35–37.

The fourth factor obligates courts to consider the availability of lesser sanctions, which the Magistrate did here, see July 1, 2014 Op. & Order at 42–46 ("The Court is mindful that, in choosing the correct sanction, it must consider whether punishment short of entering a default as to liability, or some issue connected with liability, would be sufficient to address the magnitude of the misconduct involved" and explaining its reasoning for imposing serious sanctions).

*Evidentiary Sanction*: "In selecting a sanction under Rule 37, a court may properly consider both punishment and deterrence." Bratka, 164 F.R.D. at 459 (citing Nat'l Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976); Patton v. Aerojet Ordnance Co., 765 F.2d 604, 607 (6th Cir. 1985)). Defendant Tellermate's persistent misconduct and gross negligence in the discovery process in this case warrant sanctions. See Bratka, 164 F.R.D. at 463.

Further, significant sanctions are necessary to deter future parties and their counsel from engaging in similar behavior before this Court.

In Bratka, this Court imposed a default judgment where a defendant was guilty of "gross negligence and lack of good faith in complying with plaintiff's discovery requests and the Court's discovery order." Id. It did so, in part, because the defendant withheld discoverable documents that were relevant to the issues of fault and proximate cause. The Court reasoned:

> [i]f litigants are to have any faith in the discovery process, they must know that parties cannot fail to produce highly relevant documents within their possession with impunity. Parties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.

Id.

Like the Magistrate Judge, the Court believes that Defendant Tellermate's conduct with respect to the salesforce.com records has prejudiced the Plaintiffs' ability to present their case. Although the parties debate the relative importance of the salesforce.com records, there is no question that they are relevant to the Plaintiffs' age discrimination claim. Indeed, they were highly relevant at the time Defendant Tellermate resisted their discovery because Defendant Tellermate was then claiming that one of the reasons it terminated the Plaintiffs was that they failed to effectively use their salesforce.com accounts, a claim that Defendant Tellermate has since apparently abandoned. But because Defendant Tellermate did not preserve the salesforce.com records, those records are inherently unreliable.

The Court finds that the Magistrate Judge's decision to impose sanctions, including an award of attorneys' fees and expenses and a limitation on defense evidence, is supported by the record and is not clearly erroneous or contrary to law. The Court finds, however, that the

evidence does not support the Magistrate Judge's findings regarding the severity of the prejudice suffered by the Plaintiffs and concludes that the evidentiary sanction is overbroad.

A determination of the severity of prejudice to the Plaintiffs necessarily involves an examination of the issues for trial and the totality of the evidence available to the parties. The Defendants assert that the Plaintiffs' employment was terminated because their sales performance had declined to an unacceptable level. The Plaintiffs assert to the contrary that their sales performance exceeded that of their peers but that the Defendants manipulated their sales quotas and account profiles by eliminating their most lucrative accounts, assigned them to the sale of unprofitable products, and otherwise failed to support their sales efforts thereby setting them up to fail.

The Plaintiffs maintain that the salesforce.com records are the best evidence to support their position that without those records their ability to prosecute their claims has been severely damaged. A discussion of the salesforce.com application is necessary to understand the strength of the Plaintiffs' argument. Salesforce.com is a sales and marketing tool, not a sales management or business records keeping tool. Defendant Tellermate's employees were encouraged to use it to record information that would help them be more effective in selling Defendant Tellermate's products. This could include information like sales leads, customer contact information, the identity of the customers employees who make purchase decisions, how those customers tend to make their purchase decisions, and how best to approach customers. They might also record personal information about their customer contacts, such as: family information, hobbies, favorite sports teams, etc. The salesforce.com account would also be used as a sales calendar to record dates and times of appointments and to schedule reminders for follow-up contacts. The amount, frequency, and kind of information recorded would be entirely up to the salesperson

using the application. Salesforce.com is a digital repository for the kind of information that a salesperson of the last century would have recorded on Rolodex cards, calendars, and notebooks. It has many of the features of today's social medica applications. It can be used to send email, photographs, and documents.

Although the Plaintiffs emphasize the importance of the salesforce.com records to their ability to prove their claim of age discrimination, it appears that the Plaintiffs have significant personal knowledge of the sales activities of their co-workers. Defendant Tellermate's sales department is a relatively small group of individuals. The Plaintiffs, because of their long tenure, and Mr. Brown's position as a regional sales director, were personally acquainted with most if not all of them and had at least general knowledge of their responsibilities and effectiveness. Indeed the Plaintiffs' opposition to the Defendants' motion for summary judgment, including their individual affidavits, shows that they have firsthand knowledge of various aspects of the activities of the entire Tellermate sales staff and that they are aware of how all of the major customer accounts are handled. They have sufficient first-hand knowledge to make their own calculations and projections about their sales efforts and those of other Tellermate sales employees.

Furthermore, it has not been suggested that the Plaintiffs have not been provided with unhindered access to much of Defendant Tellermate's official sales, business, and personnel records kept in the regular course of business. These records would presumably include sales results for all of Defendant Tellermate's sales staff and all of Defendant Tellermate's customers, including sales staff travel and entertainment expenses as well as the amount of sales generated by each employee. The Plaintiffs' counsel listed the kinds of business records maintained by Defendant Tellermate in a letter to defense counsel on October 18, 2012 as follows:

- Monthly Pilot Reports for the period of January 1, 2009 to present;

- Monthly Company Forecasts for the period of January 1, 2009 to present;

- Monthly Commission Reports for the period of January 1, 2009 to present;

- Sales and Commission Targets for the period of January 1, 2009 to present;

- Sales reports showing monthly revenue generation for the period of January 1, 2009 to present;

- Geographic Territory and Account Lists for North America for the period of January 1, 2010 to present;

- Territory Report Out Reports and Kickoff Reports for the years 2005 to present;

- Documents sufficient to show the customers, including locations per customer, assigned to the above individuals, for each month for the years 2009 to present;

- SalesForce.com Reports for each month for the period of January 1, 2009 to present; and

- Weekly expense reports for the period of January 1, 2010 to present.

October 18, 2012 Letter from Pls.' Counsel at 5, doc. 24-6. Defendant Tellermate's business records would seem to be a more useful source of evidence than the contents of salesforce.com accounts.

The Plaintiffs have had access to their salesforce.com accounts since July 1, 2014. Nevertheless, over a year later, at the July 17, 2015 hearing, their counsel conceded that they have never looked at those records. The unstructured and constantly changing information which was recorded in the salesforce.com accounts undoubtedly includes some additional relevant information, but its sheer volume and somewhat haphazard nature likely produce a rather unwieldy and bewildering mass of random information. This may explain why the Plaintiffs themselves have not yet begun to examine the contents of their own salesforce.com accounts to determine what information they contain.

After considering the nature of this evidence the Court has been able to discern only a few instances in which it might have significant value. If the Defendants were to claim, as Defendant Tellermate did previously, that the Plaintiffs failed to effectively use the salesforce.com sales tool then, of course, the salesforce.com data could be used to rebut that contention. If an issue were to arise regarding a specific transaction or event that would normally be recorded in a salesforce.com account then the data could be mined to glean whatever information it might contain about that event.

But the Court is not persuaded that the salesforce.com data could be effectively used as evidence to compare the sales performance or effectiveness of the Plaintiffs with that of other Tellermate sales employees. Clearly, the Court would not permit the parties to dump this massive amount of unstructured data in the jury's lap for them to evaluate. While theoretically it might be possible for an expert (or a large team of them) to examine this massive amount of daily information recorded by 20 or 30 different sales employees over a period of months or years and reach some opinions about their comparative level of activity and effectiveness, the questionable admissibility and limited persuasive value of such evidence would hardly justify the effort and expense, particularly when the Plaintiffs can offer their own testimony and the Defendants' sales and personnel records.

The Plaintiffs' salesforce.com accounts were not assigned to other users after they were terminated, so, unlike the accounts of their former peers, the Plaintiffs' accounts were essentially frozen in time and not subject to the kind of daily or hourly changes which might occur in an active account. While Defendant Tellermate failed to take any steps to protect the integrity of the Plaintiffs' accounts, there is no evidence that any material changes or deletions were made. Thus there is at least the possibility that their accounts presently contain weeks months or years of data

relating to their own sales efforts. However as of oral argument on July 17, 2015, the Plaintiffs had not bothered to examine the content of their salesforce.com accounts to determine whether there had been any alterations or deletions or whether they contain any information that would be favorable to their case.

The Plaintiffs argue that it is unreasonable to expect them to be able to determine whether any alterations or deletions have occurred in their salesforce.com accounts. See Pls.' Supp. Br., doc. 235–1. Their arguments are not persuasive. If the Plaintiffs engaged in some significant sales-related activity that they believe was recorded in their salesforce.com accounts they can certainly look for it and determine if it is present or not. If they are concerned about something they cannot recall which might have been recorded then it would be reasonable to presume that the matter was of trifling significance.

In light of the foregoing, the Court concludes that a somewhat narrower evidentiary sanction would be sufficient to mitigate the prejudice suffered by the Plaintiffs and serve the goal of deterrence. The Court will sanction Defendant Tellermate as follows:

1. Defendant Tellermate shall not be permitted to introduce salesforce.com records as evidence at trial or refer to those records at trial;

2. Defendant Tellermate is precluded from asserting that the Plaintiffs' use or non-use of the salesforce.com application was in any way deficient or that it justified their termination;

3. If evidence at trial raises any contested issue about the sales conduct of the Plaintiffs or any other Tellermate salesperson, and the Plaintiffs show that missing salesforce.com data would corroborate their position, then the Court will give the jury an adverse inference instruction appropriate for the circumstances; and

4. The Plaintiffs will be permitted to testify as to what the salesforce.com records would have shown had they been properly preserved. Defendant Tellermate may rebut this testimony only through independent evidence, and not the salesforce.com records.

This sanction will permit the Plaintiffs to effectively present their case with respect to the issue of pretext and ameliorate the prejudice resulting from Defendant Tellermate's and its former counsel's actions. It will also prevent Defendant Tellermate from benefiting from its own misconduct while allowing Defendant Tellermate to present a legitimate defense unrelated to the salesforce.com records—that the Plaintiffs were terminated because they failed to meet their sales quotas. Finally, these sanctions will discourage future litigants from their violating duties under the Federal Rules of Civil Procedure.

The Court has used the language of the clearly erroneous/contrary to law standard of review in the above analysis. The application of that standard to a significant evidentiary sanction is perhaps a close call. Thus, the Court has also considered whether *de novo* review would change the result in this case and has concluded that it would not. This Court, upon *de novo* review, would reach the same conclusions regarding the propriety of an evidentiary sanction in addition to the award of attorneys' fees and expenses, and this Court would exercise its discretion to impose the evidentiary sanction outlined above.

*Attorneys' Fees*: The Magistrate Judge's award of attorneys' fees against Defendant Tellermate and its former counsel is well-supported by the record.[2]

Rule 26(g) requires a response to a discovery request to be signed by an attorney of record, certifying "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response is "consistent with [the Federal Rules of Civil

---

[2] Interested party Calfee sought leave to submit new evidence in support of its argument that the Court should not impose attorneys' fees against it. See Calfee's Motion to Present New Evidence, doc. 148. The Court denied Calfee's motion and provided all of the parties the opportunity to submit supplemental briefs on the issue of attorneys' fees based on the record before the Magistrate Judge at the time of his July 1, 2014 Opinion and Order. See July 8, 2015 Order, doc. 214. At the July 17, 2015 oral hearing, the Court also permitted the parties to present argument concerning the attorneys' fees issue based on the record before the Magistrate Judge. Calfee did not submit briefing on the attorneys' fees issue and, at the oral hearing, declined to present argument concerning the same unless it was permitted to introduce new evidence to the Court. In contrast, Defendants Tellermate and Insperity submitted briefs presenting argument on the issue of attorneys' fees and also addressed the attorneys' fees issue at the oral hearing.

Procedure]" and "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B).

> If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3). Here, the Magistrate Judge concluded that counsel for Defendant Tellermate responded to the Plaintiffs' discovery requests without performing a reasonable inquiry into whether Defendant Tellermate could produce the salesforce.com records. See July 1, 2014 Op. & Order at 32–34. On the record before the Magistrate Judge, the Court agrees with his analysis, and finds that his award of attorneys' fees under Rule 26(g)(3) was appropriate.

Rule 37(a) governs motions for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a). Pursuant to that rule, if a party's motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Here, the Magistrate Judge concluded that Defendant Tellermate's opposition to the Plaintiffs' motion to compel the attorneys'-eyes-only documents was not substantially justified because Defendant Tellermate failed to present "evidence that a single one of these documents was properly so designated," and failed "to recognize . . . that it had the burden to articulate and to prove, by competent evidence, its claim of harm which would result if any of the documents were viewed by the Browns." July 1, 2014 Op. & Order at 42–43. On the record before the Magistrate Judge, the Court agrees with his analysis, and finds that his award of attorneys' fees under Rule 37(a)(5) was appropriate.

Rule 37(b)(2) provides sanctions for a party's or attorney's failure to obey a discovery order. "Both parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders." <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 763–64 (1980). Indeed, "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." <u>Id.</u> (internal quotation marks, citation, and alteration omitted). If a party fails to obey an order to provide or permit discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). As discussed above, Defendant Tellermate failed to obey the Magistrate Judge's order to provide or permit discovery. Consequently, the award of attorneys' fees under Rule 37(b)(2)(C) was appropriate.

Under 28 U.S.C. § 1927, an attorney "who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Sixth Circuit has interpreted the statute:

> to provide for sanctions when an attorney knew or should have known that a claim pursued was frivolous, or that his litigation tactics will needlessly obstruct the litigation of non-frivolous claims. Sanctions under § 1927 are also appropriate where there has been some conduct on the part of the subject attorney that trial judges could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate. However, the conduct must exceed simple inadvertence or negligence that frustrates the trial judge.

<u>Dubuc v. Green Oak Twp.</u>, 482 F. App'x 128, 134 (6th Cir. 2012) (internal quotation marks, citations, and alterations omitted). The Magistrate Judge concluded that Defendant Tellermate's former counsel conducted themselves in bad faith, and the Court has reached the same conclusion. In the Court's view, the conduct of Defendant Tellermate's former counsel "[fell] short of the obligations owed by a member of the bar to the court and which, as a result, cause[d] additional expense to the opposing party." <u>Id</u>. Given this finding, an award of attorneys' fees under 28 U.S.C. § 1927 is appropriate.

In passing, Defendant Tellermate appears to argue that its actions in opposing the Plaintiffs' discovery requests were substantially justified, and, as a result, they cannot be liable for attorneys' fees in this case. <u>See</u> Def. Tellermate's Objections at 34 ("Nor did this Court conclude at that time that Defendants' opposition to the Browns' Motion was "substantially unjustified" so as to justify an attorney's fee sanction under Rule 37"). As discussed above, the Rules provide an exception to the imposition of sanctions where the sanctioned party's actions were "substantially justified." However, Defendant Tellermate does not develop this argument in its brief, and a review of the record in this case does not support a finding that its actions were substantially justified. Moreover, the Court's finding of bad faith "negates any substantial justification for [Defendant Tellermate's] conduct." <u>New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.</u>, No. 6:12-CV-91-GFVT-HAI, 2014 WL 5107466, at *17 (E.D. Ky. Mar. 25, 2014) <u>report and recommendation adopted,</u> No. CIV. 12-91-GFVT, 2014 WL 5107464 (E.D. Ky. Sept. 30, 2014).

In combination, Defendant Tellermate and its former counsel: made repeated misrepresentations to the Court; presented legally irrelevant arguments to the Court, one of which—that Defendant Tellermate's contract with salesforce.com prevented it from disclosing

data entered into salesforce.com—was patently false; violated multiple discovery-related orders; and generally conducted themselves in a manner contrary to both the letter and the spirit of the Federal Rules of Civil Procedure. This behavior led to unnecessary delay in the prosecution of this case and required a significant expenditure of time and resources by the Court and the Plaintiffs. Defendant Tellermate and its former counsel are therefore jointly liable for the attorneys' fees identified by the Magistrate Judge in his July 1, 2014 Opinion and Order.

*Defendant Insperity*: In its Objections, Defendant Insperity argues that it should not be subject to any sanctions because it committed no misconduct during discovery in this case. Defendant Insperity notes that the Magistrate Judge treated it and Defendant Tellermate as a joint entity in his July 1, 2014 Opinion and Order, but emphasizes that it is, in fact, a separate entity from Defendant Tellermate. According to Defendant Insperity, it: (1) did not have possession or control of Defendant Tellermate's salesforce.com records; (2) believed that its former counsel had all of the responsive Frank Mecka documents; and (3) had no role in the document dump or the AEO designation concerning Defendant Tellermate's personnel evaluations.

In response, the Plaintiffs maintain that the Magistrate Judge properly imposed sanctions against Defendant Insperity. According to the Plaintiffs, Defendant Insperity and Defendant Tellermate both violated multiple court orders and jointly obstructed the Plaintiff's discovery efforts. The Plaintiffs contend that Defendant Insperity's handling of the Frank Mecka documents is representative of its actions in this case. They argue that most of the Frank Mecka documents that were the subject of the Magistrate Judge's Opinion and Order were possessed by Defendant Insperity, which in their view, undermines Defendant Insperity's claim that it committed no misconduct in the discovery phase of this case. Moreover, the Plaintiffs

emphasize, Defendant Insperity now attempts to present new evidence and new arguments that were not presented to the Magistrate Judge prior to his issuance of the sanctions order.

In his July 1, 2014 Opinion and Order, the Magistrate Judge referred to Defendant Tellermate and Defendant Insperity as "Tellermate." See July 1, 2014 Op. & Order at 2 (discussing all of the Defendants as "Tellermate" "for ease of reference"). The Magistrate Judge cannot be faulted for his decision to do so; at the time, Defendant Tellermate and Defendant Insperity were jointly represented and no party to this litigation made any effort to distinguish between the two as separate entities. It is now apparent that Defendant Tellermate and Defendant Insperity are separate entities. As a result, Defendant Insperity cannot be held liable for the discovery misconduct related to the salesforce.com records and the document dump. Those documents were not in the possession of Defendant Insperity, and Defendant Insperity had no obligation to produce them. The evidence in the record does not support the imposition of any sanctions against Defendant Insperity.

Generally, " 'one party to litigation will not be subjected to sanctions [for failure to cooperate in discovery] because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party.' " Patton v. Aerojet Ordnance Co., 765 F.2d 604, 606 (6th Cir. 1985) (quoting DeLetelier v. Republic of Chile, 748 F.2d 790, 795 n. 2 (2d Cir. 1984)). Although the record establishes a business relationship between Defendant Insperity and Defendant Tellermate, it does not support the conclusion that Defendant Insperity controlled the actions of Defendant Tellermate. The evidence in the record does not support the imposition of any sanctions against Defendant Insperity, and insofar as the Magistrate Judge's Opinion and Order does so, it is contrary to law.

B.      *The Plaintiffs' Second Motion for Default Judgment and the Magistrate Judge's March 30, 2015 Opinion and Order.*

While the parties continued to brief their objections to the Magistrate Judge's July 1, 2014 Opinion and Order, the Plaintiffs filed a Second Motion for Default Judgment (doc. 145) on October 23, 2014. In their motion, the Plaintiffs accused the Defendants of further discovery-related misconduct, including: continuing to withhold Frank Mecka documents; continuing to misrepresent the number of Frank Mecka documents they were withholding; baselessly claiming the attorney-client privilege for otherwise discoverable documents; and concealing the existence of an insurance policy that would otherwise have satisfied judgment in this case. Pls.' Second Mot. for Default J. at 2–3, doc. 145.

1.      The Magistrate Judge's March 30, 2015 Opinion and Order

At the outset of his Opinion and Order, the Magistrate Judge identified two primary issues before him: (1) the Defendants' untimely production of insurance-related information as required by Federal Rule of Civil Procedure 26(a) and (2) the Defendants' continued withholding of Frank Mecka documents. See March 30, 2015 Op. & Order at 1. The Magistrate Judge reviewed the record and observed that "the facts relating to the disclosure of insurance coverage appear to be undisputed." Id. at 2. Initially, in 2012, the Defendants represented that they were potentially covered by one insurance policy and denied the existence of any other additional policies. Id. Two years later, the Defendants disclosed a second insurance policy, which potentially provided coverage for Defendant Tellermate. Id. at 2–3. Defendant Tellermate acknowledged that it supplemented its discovery response with the additional policy but argued that the Plaintiffs suffered no prejudice as a result of its late disclosure. Id. at 3.

The Magistrate Judge then turned to the Frank Mecka documents, which he discussed at length in his July 1, 2014 Opinion and Order. The parties offered competing narratives to explain the ongoing discovery problems related to the Frank Mecka documents. The Plaintiffs asserted that the Defendants' continued misrepresentations and withholding of these documents was consistent with the Defendants' prior history of misconduct and prevented the Plaintiffs from developing their case. In response, Defendant Insperity asserted that it had never received a formal request for any Frank Mecka documents in its possession and therefore was under no obligation to provide those documents to the Plaintiffs. Id. at 4. Defendant Tellermate took a different approach, emphasizing that most of the documents the Plaintiffs were concerned with were merely duplicates of documents already disclosed to them previously. Id. at 5.

Addressing the Plaintiffs' request for default judgment, the Magistrate Judge acknowledged that it was "the most severe sanction" available to him and should only be imposed where: (1) a party acted in willful bad faith; (2) the opposing party suffered prejudice; (3) the court warned the disobedient party that the failure to cooperate could result in default judgment; and (4) less drastic sanctions were attempted. Id. at 7–8. On the record before him, the Magistrate Judge concluded that, while Defendant Tellermate may have acted in bad faith by failing to disclose the existence of the second insurance policy, the Plaintiffs had suffered little, if any harm, as a result of that untimely disclosure. Id. at 8–11. Moreover, the Magistrate Judge found, any prejudice the Plaintiffs may have suffered by the untimely disclosure of other documents was limited because summary judgment proceedings before the Court had been put on hold. Id. at 10–11. Finally, the Magistrate Judge held, the Defendants had not been put on notice of the potential for default and lesser sanctions were available to him that would have been sufficient to cure any prejudice suffered by the Plaintiffs. Id. at 11–12. The Magistrate

Judge therefore denied the Plaintiffs' Second Motion for Default Judgment but directed Defendant Insperity to promptly produce any additional Frank Mecka documents. Id. at 12.

## 2.    The Court's Analysis

The Plaintiffs subsequently filed an Objection (doc. 192) to the Magistrate Judge's ruling denying their Second Motion for Default Judgment.

The Court has conducted a *de novo* review of the Magistrate Judge's March 30, 2015 Opinion and Order denying the Plaintiffs' Second Motion for Default Judgment and adopts the Magistrate Judge's findings as its own. In the Court's view, the Magistrate Judge conducted a thorough Rule 37(b)(2) analysis and correctly concluded that the Defendants' misconduct did not rise to the level sufficient to justify the imposition of default judgment.

Two of the Magistrate Judge's findings are of particular importance to the Court's conclusion. First, the Magistrate Judge found that Defendant Tellermate's and its former counsel's failure to disclose insurance coverage permitted the inference that they acted in bad faith and was consistent with their "grossly deficient participation in the discovery or disclosure process."  March 30, 2015 Opinion and Order at 8–9, doc. 189. However, the Magistrate Judge concluded that, while the other instances of misconduct identified by the Plaintiffs were troubling, they did not support a finding of bad faith against the Defendants. Id. at 9–10. The narrow finding of bad faith is in contrast to the pervasive bad faith conduct at issue in the Plaintiffs' First Motion for Default Judgment.

Second, the Magistrate Judge found that the Plaintiffs suffered limited prejudice from the Defendants' misconduct at issue in the Second Motion for Default Judgment. March 30, 2015 Opinion and Order at 10–11. In the Court's view, the lone action that supported a finding of bad

faith—Defendant Tellermate's and its former counsel's failure to disclose the existence of a second insurance policy—did not actually prejudice the Plaintiffs. As the Magistrate Judge explained, the Plaintiffs' settlement demand did not exceed the limits of the first insurance policy, id. at 11, and, as a result, any settlement discussions would not have been impacted by knowledge of the second insurance policy's existence. As the Court previously noted, no one factor under the Rule 37(b) sanctions analysis is dispositive, Reyes, 307 F.3d at 458, but the limited prejudice suffered by the Plaintiffs weighs heavily against a finding that default judgment is appropriate here.

The Court offers several additional reasons why it will not grant default judgment in favor of the Plaintiffs. The Plaintiffs have presented a detailed factual account of the Defendants' discovery-related misconduct following the July 1, 2014 Opinion and Order in their objections to the Magistrate Judge's March 30, 2015 Opinion and Order. See Pls.' Objections, doc. 192; Pls.' Replies in Supp. of Objections, docs. 202, 203. But, in the Court's view, they have not articulated a legal basis for an award of default judgment in this case. For example, the Plaintiffs repeatedly cite Grange Mut. Cas. Co. v. Mack, 270 F. App'x 372, 378 (6th Cir. 2008), for the proposition that default judgment is appropriate when a party obstructs an opposing party "from accessing evidence needed to bring the case." However, the Plaintiffs do not adequately explain how the Defendants' obstruction prevented them from accessing evidence needed to bring their case.

Nor do the Plaintiffs attempt to engage with the requirement that a court provide notice and consider lesser sanctions before imposing default judgment as a sanction under Rule 37(b)(2). The misconduct described in the Plaintiffs' Second Motion for Default Judgment pales in comparison to the misconduct at the heart of the Magistrate Judge's July 1, 2014 Opinion and

Order. If default judgment was not an appropriate sanction in response to Defendant Tellermate's

and its former counsel's actions concerning the salesforce.com records, it is not an appropriate

sanction for the lesser misconduct at issue in the Second Motion for Default Judgment.[3]

C.    *Calfee's Motion for Leave to Present New Evidence and the Magistrate Judge's March 30, 2015 Order*

On November 4, 2014, Calfee filed a motion requesting an order finding that (1) the

attorney-client privilege between itself and the Defendants had been waived and (2) allowing it

to present additional evidence at an evidentiary hearing on objections to the Magistrate Judge's

July 1, 2014 Opinion and Order. See Calfee Motion, doc. 148. Calfee explained that, following

the termination of their representation of the Defendants, Defendant Tellermate threatened to sue

it for legal malpractice and asserted "advice of counsel" as a defense to the sanctions imposed by

the Magistrate Judge. Id. at 3. As a result, Calfee argued, the attorney-client privilege no longer

attached to its communications with the Defendants. Id. Because it could not present this

evidence at the time of the proceedings before the Magistrate Judge, Calfee asserted that it was

entitled to an evidentiary hearing at which it would present new evidence for the Court's

consideration. Id.

The Magistrate Judge issued an Order (doc. 190) addressing Calfee's Motion. He

observed that Calfee's request for an order declaring the attorney-client privilege waived

"appear[ed] to be largely moot" based on Defendant Tellermate's filing of a motion (doc. 186) to

which they attached numerous attorney-client communications. Order on Calfee's Mot. at 2. The

Magistrate Judge reasoned that "[h]aving chosen to waive the privilege for those

_____

[3] To the extent that the Plaintiffs argue that the Court should require the production of the Brown documents, see Pls.' Objection at 17, the Court understands that the Magistrate Judge is addressing this issue with the parties.

communications, Tellermate cannot now be heard to claim that other communications regarding the same subject-matter are still protected by the privilege." Id. at 2–3 (citing Procter & Gamble Co. v. Team Technologies, Inc., 2013 WL 3778740, *1 (S.D. Ohio July 18, 2013)). Recognizing that there still may be disputes as to the scope of the waiver, the Magistrate Judge denied Calfee's motion with respect to the waiver of the attorney-client privilege. Id. at 3. As to Calfee's request that it be permitted to submit new evidence to the Court, the Magistrate Judge deferred to the Court for a ruling on this portion of Calfee's motion. Id.

On July 8, 2015, the Court issued an Order (doc. 214) denying Calfee's Motion to Present New Evidence (doc. 148) and Defendant Tellermate's Motion for Leave to File Second Supplemental Brief in Support of Objections (doc. 186). In their motions, Defendant Tellermate and Calfee sought leave to present the Court with new evidence regarding their actions during the discovery phase of this case. While the Court recognized that it had the authority to consider new evidence, the Court declined to exercise its discretion to do so:

> The Court declines to exercise its discretion to consider new evidence in connection with the parties' objections in this case. Even if Calfee were permitted to introduce new evidence in an attempt to shift blame on to Defendant Tellermate for the misrepresentations and delays that occurred during the discovery process, there remains sufficient evidence to justify the imposition of joint liability in this case. For example, during the discovery dispute, Calfee attorneys argued to the Magistrate Judge that Defendant Tellermate was contractually prohibited from producing information from its salesforce.com accounts. This was a legal argument made by Calfee attorneys despite the plain language of the contract which indicated the exact opposite. Calfee and its attorneys are responsible for this argument, not Defendant Tellermate. Similarly, Calfee attorneys made the decision to produce 50,000 documents to the Plaintiffs, assigning "Attorneys' Eyes Only" designations to those documents, and failed to subsequently cure the overbroad production and privilege designation. The broad and unresponsive nature of the production may have resulted from Defendant Tellermate's failure to timely assist Calfee attorneys or perhaps even misrepresentations made by Defendant Tellermate to Calfee Attorneys. But Calfee attorneys nonetheless made the decision to produce those documents, assign the AEO designation to them, and then failed to take action to supplement or correct the discovery responses at issue.

Defendant Tellermate's desire to introduce new evidence is constrained by the general rule that clients are liable for the acts or omissions of their attorneys. Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396–97 (1993); Link v. Wabash R. Co., 370 U.S. 626, 633–34 (1962); see also Gilley v. Eli Lilly & Co., No. 3:10-CV-251, 2014 WL 619583, at *2 (E.D. Tenn. Feb. 18, 2014) ("With respect to plaintiff's contention that her discovery abuses were attributable to her prior counsel, the Court finds this argument unavailing. Parties are bound by counsel's conduct."). New evidence would therefore do little to alter the finding of joint liability with respect to the attorneys' fees sanction.

July 8, 2015 Order at 3–6, doc. 214. To develop the record for appellate review, the Court directed the parties to submit proffers of what new evidence they would have presented to the Court if the Court had granted their motions. See Calfee Proffer, docs. 222, 224–26; Def. Tellermate Proffer, doc. 223.

The Court will adhere to its July 8, 2015 Order. In so doing, the Court notes that much of the evidence proffered by Calfee would be merely duplicative of the evidence already in the record which includes extensive testimony from Calfee attorneys. The proffered evidence would not change the result in this case.

## IV.     Conclusion

For the foregoing reasons, the Court adopts the Magistrate Judge's July 1, 2014 Opinion and Order (doc. 96) as modified by this Opinion and Order; adopts the Magistrate Judge's March 30, 2015 Opinion and Order (doc. 189); and grants Defendant Tellermate's Motion for Extension of Time (doc. 132).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 11, 2015