IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert A. Brown, et al.,

              Plaintiffs,

    v.

Tellermate Holdings Ltd., et al.,

              Defendants.

Case No. 2:11-cv-1122

Judge Graham

Magistrate Judge Kemp

## OPINION & ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment (doc. 52). For the following reasons, the Court will grant in part and deny in part the Defendants' Motion (doc. 52).

## I.    Background

This civil action was originally filed in the Common Pleas Court of Franklin County Ohio and was removed to this Court on December 15, 2011.

The Plaintiffs, Robert and Christine Brown, are residents of Westerville, Ohio. Defendant Tellermate is a corporation that is in the business of producing and selling electronic cash counting and point of sale devices. It is a wholly-owned subsidiary of Tellermate Holdings Limited (THL), a corporation organized under the laws of the United Kingdom, headquartered in Newport, Wales, UK. Defendant Insperity PEO Services LP provides HR services to Tellermate pursuant to contract. Individual defendants Rendell, Lunn, Davies, Biss, Pilkington and Elliott are directors, officers and employees of Tellermate and THL.

Mr. Brown began his employment with Tellermate in January 1999. In January 2002, he was promoted to regional sales manager for the company's North Central and North West

regions. Mrs. Brown began her employment with Tellermate in April 1999 as a sales representative. In January 2005, she was promoted to account manager in the North Central region. The Browns employment was terminated on August 22, 2011. At that time Mr. Brown was 54 years old and Mrs. Brown was 51 years old.

The Plaintiffs claim they are victims of age-based employment discrimination. The Defendants claim that their employment was terminated for performance-based reasons unrelated to their age. In order to prove employment discrimination under Ohio law, a plaintiff may rely upon direct evidence of discrimination. In the alternative, he or she may rely upon indirect or circumstantial evidence invoking a rubric similar to the <u>McDonnell Douglas</u> factors used in federal employment discrimination cases as explained below.

In their Complaint (doc. 5), the Plaintiffs assert a claim of employment discrimination under Ohio law, specifically sections 4112.02 and 4112.99 of the Ohio Revised Code. They also assert claims for promissory estoppel, breach of contract, conversion, unjust enrichment, and negligence. The Plaintiffs do not assert any claims under federal law.


## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Longaberger Co. v. Kolt</u>, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. <u>See</u>

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Longaberger, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting Anderson, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III.    Discussion

The Defendants assert that they are entitled to summary judgment on all counts of the Plaintiffs' Complaint. The Court first addresses the Plaintiffs' age discrimination claim and then turns to their contract and tort claims.

### A.    *Count One - Age Discrimination*

The Plaintiffs bring their claim of age discrimination under Ohio Revised Code § 4112.02. "Age discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'" Blizzard v. Marion Technical Coll., 698 F.3d 275, 283 (6th Cir. 2012) (quoting Wharton v. Gorman–Rupp Co., 309 F. App'x. 990, 995 (6th Cir. 2009)). See also Alexander v. Columbus State Comm. Coll., — N.E.3d —, 2015 WL 3540418, at *7 (Ohio Ct. App. 2015) (citing Mauzy v. Kelly Servs., Inc., 664 N.E.2d 1272, 1276 (1996)) ("In deciding cases brought under R.C. 4112.14 and 4112.02, Ohio courts may rely on federal antidiscrimination case law"). A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). Here, the Plaintiffs assert that they have direct and circumstantial evidence that the Defendants discriminated against them on the basis of their age in terminating their employment. The Court discusses the Plaintiffs' direct and circumstantial evidence separately.

### 1.    Direct evidence of discrimination

The Plaintiffs assert that Tellermate's employees and agents made numerous ageist statements that are direct evidence that Tellermate terminated their employment because of their

4

age. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004) (collecting cases). In the context of age discrimination, direct evidence is evidence, if believed, that would permit a jury to conclude that age was the "but for" cause of an adverse employment action. Scheick v. Tecumseh Public Schools, 766 F.3d 523, 530 (6th Cir. 2014). If a plaintiff presents direct evidence of discrimination, "the plaintiff's case-in-chief is met, and the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 346–47 (6th Cir. 2012) (internal quotation marks and citation omitted).

a.    Alleged plan to fire older employees and replace them with younger employees

The Plaintiffs begin their opposition to the Defendants' motion for summary judgment with the assertion that they were the "victims of defendants announced plan to replace Tellermate Inc.'s older salesforce with a much younger generation." Pls.' Mem in Opp. at 9. They support this assertion with a recitation of age-related comments made by individuals having some connection with TLH and Tellermate, together with a narrative of Tellermate employees who allegedly left their employment as a result of this plan. The Plaintiffs' narrative is based entirely on the Plaintiffs' own conclusions about why their coworkers left and/or inadmissible hearsay. The Plaintiffs have simply failed to offer any probative evidence which would support a reasonable jury's finding that any such plan existed. To the extent they have offered evidence of specific ageist comments, the Court will give further attention to them below.

5

b.      Ageist comments

An employer's discriminatory comments may constitute direct evidence that an employee who was the subject of an adverse employment action was a victim of discrimination. The Defendants assert that any ageist remarks made by their officers or employees were stray remarks that do not constitute direct evidence of age discrimination. In the Defendants' view, the allegedly ageist comments identified by the Plaintiffs were: (1) ambiguous, (2) isolated, (3) temporally remote from the time of the Plaintiffs' termination, and (4) made by persons not involved in the decision to terminate the Plaintiffs' employment.

In response, the Plaintiffs argue that the Defendants' allegedly ageist comments are, in fact, direct evidence of age discrimination. Citing Chattman v. Toho Tenax America, 686 F.3d 339, 347 (6th Cir. 2012), the Plaintiffs maintain that discriminatory comments regarding an employee's age constitute direct of age discrimination even if they are not temporally proximate to an adverse employment action.

 Here, the Plaintiffs identify several statements by Defendant Tellermate's employees or agents that they believe are direct evidence of age discrimination. The Court addresses each of these statements in turn.

i.      Edgar Biss

Mr. Biss was the founder of the company and a Director of THL who retired from Tellermate in 2006. In her deposition, Mrs. Brown testified about an allegedly ageist comment Mr. Biss made sometime in the early 2000s:

| Ms. Brown: | Edgar Biss made a comment on several occasion that I thought was, looking back at it now seemed rather ageist, and I think he said this was "We like to hire bright young things here at Tellermate." |
| Counsel: | Were you privy to that comment that you claim you heard? |
| Ms. Brown: | Oh, I heard that one. |
| Counsel: | Where was that? |
| Ms. Brown: | I can't remember exactly where I was but it had been – it's been a while since I talked to Edgar. |
| Counsel: | Any estimate of the year that took place? |
| Ms. Brown: | It was in the early 2000s. |
| Counsel: | What was Mr. Biss's role with Tellermate in 2011? |
| Ms. Brown: | I believe he's still the owner of the company. |

Christine Brown Dep. at 46, doc. 72-7.

The record is devoid of any evidence about the context in which these remarks were made, whether they were made in a social setting or a business setting, whether they were directed to a group as part of a statement on hiring practices or part of a lighthearted casual conversation with another individual. Nor is there any evidence of just what role Mr. Biss had with the company at the time this statement was made or whether there is any likelihood that his comments were ever made known to any of the individuals later involved in the Plaintiffs' termination. Without such information, the Court is unable to evaluate the significance of this comment. Standing alone, it would, at most, be weakly probative of age-related bias on the part of Mr. Biss. Considering further that the comment was made about ten years before the Plaintiffs were terminated and that it was made by someone who had retired from Tellermate five years

before their termination, it would not be probative as direct evidence of an age-based animus attributable to Tellermate at the time the Plaintiffs were terminated.

### ii.    Jon Sopher

Mr. Sopher is the chairman of THL's board of directors. In his affidavit, Mr. Brown, states:

> Jon Sopher, THL's Chairman of the Board of Directors, stated during a Tellermate, Inc. sales meeting in November 2006 I attended that we looked like a pretty old and aged sales force and that what he really thought the company needed was a refresh and to hire some young college-age kids to sell the Tellermate product, including to pubs.

Robert Brown Aff. at ¶ 18, doc. 72-1. The Plaintiffs have also filed the affidavit of Kenneth B. Saunier, a former Tellermate employee. His affidavit also refers to Mr. Sopher's statements at the 2006 sales meeting: "At a meeting in or about November 2006 in Atlanta Georgia, Jon Sopher of Tellermate stated that Tellermate would be better off replacing its existing sales force with younger college-age kids." Saunier Aff. at ¶ 2, doc. 72-2. Both Brown and Saunier claim that Sopher repeated these statements at the 2007 sales meeting. See Robert Brown Aff. at ¶ 22; Saunier Aff. at ¶¶ 3–4. Paul Rendell's affidavit supports their claim that Sopher spoke at length at these meetings. See Rendell Decl. at ¶ 22, doc. 52-1.

Courts consider four factors to determine whether an employer's comments demonstrate an age bias:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

Skelton v. Sara Lee Corp., 249 F. App'x 450, 455 (6th Cir. 2007) (citing Peters v. Lincoln Elec. Co., 285 F.3d 456, 477–78 (6th Cir. 2002)). "[N]one of these factors is individually dispositive of age discrimination, but rather, they must be evaluated as a whole, taking all of the circumstances into account." Peters, 285 F.3d at 478 (citing Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325, 1330 (6th Cir. 1994)).

Under this framework, the Defendants maintain that Sopher's comments do not amount to direct evidence of age discrimination because they "were (a) ambiguous; (b) isolated; (c) temporally remote from the Browns' terminations; and (d) made by [a person] wholly uninvolved in the decision to terminate the Browns." Defs.' Mot. for Summ. J. at 16; Defs.' Reply at 3, doc. 76. In the Court's view, Sopher's comments were not ambiguous or vague; indeed, his comments made clear that he believed Tellermate should "refresh" its salesforce by replacing "pretty old and aged sales force" members. Nor were his comments isolated. He repeated them twice at a prominent gathering of Tellermate's salesforce and management.

Further, Sopher was not "wholly uninvolved" in the decision to terminate the Browns. In determining whether a speaker's comments were evidence of direct discrimination, part of the relevant inquiry is whether the speaker "was in a position to influence the alleged [adverse employment] decision." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 355 (6th Cir. 1998). See also Griffin v. Finkbeiner, 689 F.3d 584, 595 (6th Cir. 2012) ("Generally, discriminatory comments can qualify as evidence that a particular decision was discriminatory if the speaker was in a position to influence the alleged decision." (citation and internal quotation marks omitted)). That Sopher did not actually terminate the Plaintiffs ignores that he "was in a position to shape the attitudes, policies, and decisions" of Tellermate's managers, including Lunn who ultimately terminated the Plaintiffs. See Ercegovich, 154 F.3d at 355 (citing Emmel v.

9

Coca–Cola Bottling Co. of Chicago, 95 F.3d 627, 632 (7th Cir. 1996) (biased remarks corroborate plaintiff's discrimination claim where remarks were made by "top policymakers in the company . . . who [we]re ultimately responsible for the company's employment practices"); Tuck v. Henkel Corp., 973 F.2d 371, 376–77 (4th Cir. 1992) (biased statements of head of corporation's R & D Group were probative evidence of age discrimination against plaintiff where speaker may have influenced actual decisionmakers), cert. denied, 507 U.S. 918 (1993)).

In Talley v. Bravo Pitino Restaurant, Ltd., the Sixth Circuit considered, *inter alia*, whether the plaintiff, an African-American employee of the defendant, presented direct evidence to support his claim of race discrimination. 61 F.3d 1241, (6th Cir. 1995), overruled on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). The plaintiff worked for the defendant as a sous chef from November 1990 until April 1992. Id. at 1243. After participating in an after-hours party at the defendant-restaurant, the plaintiff, along with numerous other co-workers, was terminated. Id. at 1244. Approximately a week after his termination, the defendant rehired seven of the plaintiff's co-workers, all of whom were white. Id. The defendant hired a white sous chef to fill the plaintiff's position. Id.

The plaintiff presented evidence that, during the course of his employment, the defendant's owners, one of whom worked as its general manager, frequently used racial slurs when referring to African-Americans. Id. The Court concluded that evidence that both owners "had made racist comments which constitute direct evidence that plaintiff's termination may have been racially motivated." Id. at 1249. The Court reached this conclusion despite (1) the owners' comments not addressing the plaintiff specifically and (2) the lack of temporal proximity between the owners' racist comments and the plaintiff's termination.

In <u>DiCarlo v. Potter</u>, the plaintiff brought, *inter alia*, a national origin discrimination claim against the defendant following his termination from his position as a mail processor for the United States Postal Service. 358 F.3d 408 (6th Cir. 2004) <u>overruled on other grounds by Gross</u>, 557 U.S. at 180. The plaintiff worked as a probationary employee from January through April of 2000. <u>Id.</u> at 411. The plaintiff's supervisor, Timothy Bailey, conducted monthly reviews of the plaintiff's work performance and consistently reported that his work performance was deficient. <u>Id.</u> at 411–12. During the three months the plaintiff worked for the postal service, Bailey allegedly made disparaging remarks about the plaintiff's national origin. <u>Id.</u> at 413. The plaintiff presented evidence that Bailey called him a "dirty wop" and complained that "there were too many dirty wops around [the facility]." <u>Id</u>. The defendant subsequently terminated the plaintiff's employment based on Bailey's recommendation. <u>Id</u>.

The Sixth Circuit reversed the district court's grant of summary judgment on the plaintiff's national origin discrimination claim. After finding that Bailey had decision-making authority with respect to the decision to terminate the plaintiff, the court then turned to whether Bailey terminated the plaintiff "because of his predisposition to discriminate on the basis of national origin." <u>Id.</u> at 416. In the court's view, this issue required it to determine whether there was a causal connection between Bailey's discriminatory remarks and his recommendation that the plaintiff be terminated. <u>Id.</u> at 416–17. The court concluded that Bailey's derogatory reference to the plaintiff's Italian-American heritage three weeks prior to the plaintiff's termination was sufficient to establish such a causal link between the two events. <u>Id.</u> at 417. The court emphasized the temporal proximity between the discriminatory act and the plaintiff's termination and concluded that, in the case before it, causation could "be demonstrated with a lesser quantum of evidence than in other cases not involving such a tight time line of events." <u>Id</u>. The Court

reached this conclusion despite Bailey's derogatory statements not being made in relation to the decision to terminate the plaintiff's employment.

Less than a month after the Sixth Circuit's ruling in <u>DiCarlo</u>, it issued its opinion in <u>Rowan v. Lockheed Martin Energy Sys., Inc.</u>, 360 F.3d 544 (6th Cir. 2004). The plaintiffs in <u>Rowan</u> were employed at the defendant's uranium enrichment plant in Oak Ridge, Tennessee. <u>Id.</u> at 546. During their employment in the plant's environmental compliance department, the plaintiff's supervisors made comments about the need to lower the average age of the plant in connection with planned layoffs. <u>Id.</u> at 546–47. Further, the plaintiffs' immediate supervisor occasionally called them "old farts." <u>Id.</u> at 547. The defendant laid-off the plaintiffs as part of a reduction in force, and the plaintiffs subsequently filed an age discrimination lawsuit against the defendant. <u>Id.</u> at 546–47.

After analyzing these comments, the court concluded that ageist comments unrelated to the decision to terminate the plaintiffs did not constitute direct evidence of discrimination. Specifically, the court held, "[s]ince the plaintiffs do not allege that [those statements] were made in relation to the decision to discharge the plaintiffs as part of the reduction in force, an inference is required that [age] bias may have played a role in the decision to select these plaintiffs." <u>Id.</u> at 550.

Sixth Circuit panels have recognized the tension between <u>Rowan</u> and <u>Talley/DiCarlo</u>. <u>See</u> <u>Chattman v. Toho Tenax Am., Inc.</u>, 686 F.3d 339, 347 (6th Cir. 2012); <u>Hale v. ABF Freight Sys., Inc.</u>, 503 F. App'x 323, 330 n.6 (6th Cir. 2012); <u>Blair v. Henry Filters, Inc.</u>, 505 F.3d 517, 525–26 (6th Cir. 2007) <u>overruled on other grounds by</u> <u>Gross</u>, 557 U.S. at 177 n. 4. As the court in <u>Blair</u> explained:

> We note, however, that there exists some tension in the law of this circuit. In <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241 (6th Cir. 1995), we held that

racist comments by the plaintiff's managers "constitute[d] direct evidence that plaintiff's termination may have been racially motivated," notwithstanding that the comments were temporally removed from the termination decision and did not address the plaintiff in particular. Id. at 1249. Similarly, in DiCarlo, a supervisor told an Italian-American employee that there were too many "dirty wops" working at the facility; about two weeks later, the supervisor terminated the employee. DiCarlo, 358 F.3d at 412-13. Because the slurs were uttered by an individual with decision-making authority regarding the plaintiff's job, we held that these statements were direct evidence of national-origin discrimination. Id. at 416.

As an initial matter, we observe that this court decided both Talley and DiCarlo before Rowan and that "[r]eported panel opinions are binding on subsequent panels." 6 Cir. R. 206(c); United States v. Abboud, 438 F.3d 554, 567 (6th Cir. 2006) (when two cases reach irreconcilable conclusions, the earlier-decided case controls). Further, we see no principled reason for concluding that race-based and national-origin-based slurs are such overpowering evidence of discrimination that no inference is necessary to connect the expressed discriminatory animus to the adverse employment action, but mocking an older employee's age is not. Although Rowan did not discuss Talley or DiCarlo, we remain open to the possibility but do not determine that Rowan can be distinguished from these earlier cases.

505 F.3d at 525–26 (footnote omitted). Citing Blair, the Chattman panel also noted that:

[t]here is some tension in our precedent on the issue of when direct evidence can be based on discriminatory statements that are not temporally proximate to an employment decision. . . . Even if we assume that these cases are in conflict, we are bound by Talley and DiCarlo, which were both decided before Rowan.

686 F.3d at 347.

Sopher made his statements about the need to reduce the age of Tellermate's salesforce in his position as Chairman of the THL Board. Although THL and Tellermate are separate corporations, they have overlapping directors. Indeed, Sopher made the comments in question at two Tellermate sales meetings attended by Tellermate's US regional sales managers, marketing executives, and officers. Paul Rendell, a director of THL and its predecessor, since early 2006, is the Chief Executive Officer of Tellermate. Likewise, David Lunn, a director of THL is the Group Sales Marketing Director of THL's British subsidiary, Tellermate LTD. Lunn reports to Rendell,

and Rendell assigned Lunn to oversee Tellermate's sales force. The Browns reported to Lunn, and it was Lunn who terminated their employment after consulting with and receiving the approval of Rendell. Rendell would have been aware of the statements made by Sopher at the 2006 and 2007 sales meetings. It would be fair to infer that the comments of Sopher, the chairman of the THL board, about Tellermate hiring practices would have some influence on fellow board-member and Tellermate CEO Rendell. It would likewise be fair to infer that the sentiments conveyed by Sopher to Rendell would be transmitted to the person Rendell put in charge of the Tellermate salesforce, Lunn.[1]

"[A] corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 379–80 (6th Cir. 1993)). The context and audience of Sopher's statements are clear. They were made by the Chairman of the Board of Tellermate's parent corporation at sales meetings attended by all of Tellermate's executives and sales managers. This context and the clarity of the message conveyed by these comments, magnify their importance and relevance. Notwithstanding the fact that they were made four and five years before the Browns were terminated, a jury could reasonably conclude that they influenced the employment decisions later made by Rendell and Lunn. See Talley, 61 F.3d at 1249 (concluding that racist remarks made by the defendant's owners constituted direct evidence of discrimination despite the lack of temporal proximity between the remarks and the plaintiff's termination). Hiring policies articulated at the highest levels of corporate management

---

[1] Sopher's direct involvement in Tellermate's sales operations is evidenced by the presence of his initials on the agenda of a Tellermate management meeting held on April 11, 2012. April 11, 2012 Management Meeting Agenda, doc. 72-45. The agenda indicated that Sopher would present a "North America sales & marketing review." Id.

are likely to have enduring effect. Sopher, as Chairman of the THL Board, "was in a position to shape the attitudes, policies, and decisions of" the company and its subsidiaries, and "[w]hen a major company executive speaks, everybody listens in the corporate hierarchy." Ercegovich, 154 F.3d at 355 (citations and internal quotation marks omitted).

In light of Nguyen, Talley, and DiCarlo, and evaluating all of the factors as a whole, Peters, 285 F.3d at 478 (citing Cooley, 25 F.3d at 1330), the Court finds that Sopher's comments are direct evidence from which a jury could conclude that the Plaintiffs were terminated because of their age.

### iii.  David Lunn

Rendell placed Lunn in charge of the Tellermate salesforce in May 2009. In that role, Lunn was the Plaintiffs' direct supervisor who made the decision to terminate them. The Plaintiffs identify multiple, allegedly ageist statements made by Lunn that they believe are direct evidence of discrimination. According to Mr. Brown, Lunn made one such statement at the first Tellermate sales meeting Lunn attended:

> [Lunn] introduced [the Plaintiffs] by saying: "And so now we will hear from Grandma and Grandpa Brown." We had no grandchildren at the time and Mr. Lunn knew we had no grandchildren at the time from conversations with us. All of the existing sales force was in that meeting, as were Jason Flommerfelt and Elizabeth Jaillet from marketing. I am unsure of the precise date of this meeting, but believe it occurred in the summer of 2009. Mr. Lunn does not deny in his Affidavit that he made these comments.

Robert Brown Aff. at ¶ 24. In the Court's view, ageist ridicule by the decision-maker responsible for the Plaintiffs' termination is direct evidence of age discrimination.

The Plaintiffs also cite to a letter sent to Defendant Tellermate on behalf of Frank Mecka, a former co-worker of the Plaintiffs. In this letter, Mecka's attorney alleged that Tellermate and

Lunn discriminated against Mecka on the basis of his age. Jan. 7, 2010 Mecka Letter, doc. 72-5. The letter alleged the existence of numerous, ageist comments and remarks made by Lunn. Id. at 1–2. The statements within this letter are inadmissible hearsay and will not be considered by the Court at summary judgment.

Finally, the Plaintiffs argue that Lunn's reference to Mrs. Brown's age in an email regarding his decision to terminate her employment constitutes direct evidence of age discrimination. On May 31, 2011, Lunn emailed Trisha Landrum, a HR Specialist at Insperity:

> To cut a long story short, we have a husband and wife team based up in Ohio.
>
> Mr Bob Brown is the Regional Manager.
>
> Mrs. Chris Brown is the Account Manager
>
> Sales in this territory are very poor and we are having trouble rationalizing the combined expense of hiring the pair.
>
> I m considering terminating Chris Browns contract at then end of June. This will be a lay off.
>
> Are there any special considerations we need to be aware of?
>
> Debbie will fill you in with length of service. Chris is 50 years old.
>
> Dave

May 31, 2011 Lunn Email at 3, doc. 72-27 (errors in original). Lunn's reference to Mrs. Brown's age, without more, is not probative of age bias and does not amount to direct evidence of age discrimination.


### iv.    Shea Heer

Ms. Heer is a sales training consultant which Tellermate retained to conduct a sales training meeting in New Orleans in early 2011. According to Mr. Brown, at that training

meeting: "Herr commented that 'Boomers are technically inept.' [The Plaintiffs] were the only baby boomers in the room and were upset by the comment. David Lunn laughed at her comment. Tellermate sells technical products, and technical skills and knowledge are required in order to sell Tellermate's products." Robert Brown Aff. at ¶ 45. The Browns speculate that Heer is related to Lunn, id., but they have no firsthand knowledge of that and there is no evidence in the record to support it.

Heer was not an employee of Tellermate, and there is no evidence that she had the ability to influence the decision to terminate the Plaintiffs' employment. No context is provided for her statement, and there is no evidence that she was referring to the Browns or any other Tellermate employees. Standing alone her statements could refer to the clients of Tellermate or the general population. There is no evidence that her remark was inspired or suggested by anyone at Tellermate or that it reflected the views of Tellermate. Heer's comment does not qualify as direct evidence of age discrimination by Tellermate.

c.      Conclusion

The Court finds that the ageist statements of Jon Sopher and David Lunn are probative direct evidence of discrimination from which a reasonable jury could find that age discrimination was a "but for" cause for the termination of the Plaintiffs' employment.

2.      Indirect evidence of age-based discrimination

The Defendants maintain that the Plaintiffs cannot establish a prima facie case of age discrimination because they were not replaced by a substantially younger person. Instead, the Defendants argue, the Plaintiffs' duties were redistributed among Defendant Tellermate's

remaining employees, which does not amount to replacement as a matter of law. Moreover, the Defendants insist that the Plaintiffs cannot show that they were treated worse than any similarly-situated employee. They emphasize that Defendant Tellermate's salesforce included numerous individuals over the age of 40 at the time of the Plaintiffs' termination.

The Plaintiffs offer several arguments in response. First, they contend, the Defendants replaced Mrs. Brown with Charity Meyers and Bobby Taylor, both of whom are substantially younger than Mrs. Brown. Second, the Plaintiffs assert, their termination permitted the retention of numerous substantially younger coworkers. Third, the Plaintiffs argue, their similarly-situated and substantially younger coworkers were treated better than them.

"When a plaintiff seeks to establish age discrimination indirectly, as here, the plaintiff may establish discriminatory intent by utilizing the analysis set forth in McDonnell Douglas, as first adopted and modified by Ohio courts in Barker v. Scovill, Inc., 6 Ohio St.3d 146, 451 N.E.2d 807 (1983), and lastly by Coryell v. Bank One Trust Co. N.A., 101 Ohio St.3d 175, 803 N.E.2d 781, 2004–Ohio–723." Alexander, 2015 WL 3540418, at *7. Under Coryell, a plaintiff may establish a prima facie case of age discrimination by showing that:

> (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class.

Coryell, 803 N.E.2d at 784–85. (citation and quotation marks omitted). "[T]he fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003) (citation omitted); see also Coryell, 803 N.E.2d at 787.  A plaintiff may also satisfy the fourth element of the prima facie case by demonstrating that a "comparable non-protected person was treated better." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992)

(internal quotation marks omitted). See also Wylie v. Arnold Transp. Servs., Inc., 494 F. Supp. 2d 717, 723 (S.D. Ohio 2006) (collecting cases) ("Ohio courts have recognized, as has the Sixth Circuit, that the fourth element of the prima facie case of discrimination can be replaced with proof that a comparable person, outside the protected class, was treated better than the plaintiff").

Here, there is no dispute that the Plaintiffs were qualified for their positions. Indeed, the record is clear that they held their positions for many years and received promotions as well as numerous awards based on their performance. Further, there is no dispute that they were discharged or that they were members of the statutorily protected class. However, the parties disagree as to whether the Plaintiffs can satisfy the fourth prong of the prima facie case.

"A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990) (citing Sahadi v. Reynolds Chem., 636 F.2d 1116, 1117 (6th Cir. 1980)). Conversely, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." Barnes, 896 F.2d at 1465.

The record before the Court is mixed and contains conflicting testimony and documentary evidence concerning facts material to the Court's analysis of whether the Plaintiffs were replaced by, or that their discharge permitted the retention of, a substantially younger person. There is a genuine issue of material fact as to whether the Plaintiffs were replaced by, or their termination permitted the retention of, Theresa Murphy,[2] Charity Meyers, Bobby Taylor,

---

[2] At the time of Mr. Brown's termination, he was 54 years old. Theresa Murphy, a fellow regional manager, was 43 years old. Under Coryell, an eleven year age difference satisfies the substantially younger requirement. See Vossman v. AirNet Sys., No. 12AP–971, 2013 WL 5745284, at *4 (Ohio Ct. App. Oct. 22, 2013) ("Here, defendants filled plaintiff's position with a pilot who was 11 years younger than plaintiff. Considering the circumstances of the case, we cannot find the trial court erred in determining plaintiff's replacement was substantially younger."); see also Grosjean, 349 F.3d at 336 ("Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination prima facie case").

David Ten Kate, Michael Stafford, or Gudalupe Ramirez. Consequently, the Court finds that the Plaintiffs have presented sufficient evidence to satisfy all of the elements of a prima facie case of age discrimination under Ohio law.

Further, the Plaintiffs have presented the Court with evidence that their similarly-situated and substantially younger coworkers were treated better than them. This is an additional method by which the Plaintiffs can satisfy the fourth prong of a prima facie case of age discrimination. See Mitchell, 964 F.2d at 582. "[A] plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment to be considered similarly situated. Instead, a plaintiff need show only that he and his comparator were similar in all of the relevant aspects." Wheat v. Fifth Third Bank, 785 F.3d 230, 238 (6th Cir. 2015) (citational and internal quotation marks omitted). Here, too, the record is mixed. There is no dispute that Lunn supervised the Tellermate salesforce and that Tellermate retained many of the Plaintiffs' substantially younger coworkers after terminating the Plaintiffs' employment. However, there is a genuine issue of material fact as to whether: (1) the Plaintiffs had the same responsibilities and duties as their substantially younger coworkers and (2) the Plaintiffs performed those responsibilities and duties at a level comparable to their substantially younger coworkers. Under this alternative approach, the Court finds that the Plaintiffs have presented sufficient evidence to satisfy all of the elements of a prima facie case of age discrimination under Ohio law.

### 3.    Pretext

Tellermate asserts that its decision to terminate the Plaintiffs' employment was based on their unsatisfactory sales production and that their age played no role in that decision. The Plaintiffs assert to the contrary that their sales results exceeded that of all other Tellermate sales

employees in 2010, the year preceding their dismissal and that they were on track to achieve similar success in 2012, but were impeded by a variety of adverse actions taken by Tellermate. Those adverse actions included reducing their sales territory and reassigning lucrative accounts to others; reducing the number of tradeshows they could attend to a fraction of those attended by other sales employees; and requiring them to spend an inordinate amount of their time on a product which was plagued with defects. The Plaintiffs also claim that Tellermate manipulated their sales quotas in order to set them up for failure.

In the Sixth Circuit, a plaintiff may establish pretext by showing that the employer's proffered reason (1) has no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 915 (6th Cir. 2013). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him." Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003) (citation and internal quotation marks omitted). "[A] reason cannot . . . be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 285 (6th Cir. 2012) (emphases and quotation marks omitted).

The Plaintiffs support their contentions with facts that are within their own personal knowledge and with other facts gleaned from Tellermate's records. They also rely upon their own calculations based on Tellermate's records and their analysis of the effects of Tellermate's actions. The Plaintiffs' long history with Tellermate's sales operations at the highest levels and Mr. Brown's position as a Regional Sales Manager provide credibility for their calculations and

opinions. The Court finds that the Plaintiffs have presented sufficient evidence from which a reasonable jury could find that Tellermate's claimed nondiscriminatory reason for their termination was a pretext for age-based discrimination.

Further, the Plaintiffs have presented evidence that Tellermate's explanation for their termination has shifted over time. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir. 1996). See also Cicero v. Borg–Warner Auto, Inc., 280 F.3d 579, 592 (6th Cir. 2002) (stating that shifting justifications can create a genuine issue of fact whether a proffered reason is pretext). Tellermate initially asserted that the Plaintiffs were terminated as part of a business-related layoff. Weeks later, Tellermate stated that the Plaintiffs were terminated for performance-related reasons. This changing rationale further supports the Plaintiffs' argument that Tellermate's stated reasons for terminating them were pretextual.


### 4.    *Liability of Corporate Entities and Individuals*

The Defendants maintain that many of the corporate entities and individual defendants in this case are not liable for any of the alleged misconduct in this case. The Court addresses each of these arguments in turn.


### a.    Individual Defendants

The Plaintiffs contend that Paul Rendell, David Lunn, Gareth Davies, Edgar Biss, John Pilkington, and Debra Elliott are all liable for the alleged age discrimination the Plaintiffs suffered in this case. Defendant Tellermate recognizes that individual managers may be liable for employment discrimination under Ohio law. However, Defendant Tellermate emphasizes, only

Lunn was the Plaintiffs' manager in this case, and he did not engage in any discriminatory conduct against the Plaintiffs.

Under Ohio Revised Code § 4112, a "supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager." Genaro v. Cent. Transp., Inc., 703 N.E.2d 782, 787–88 (Ohio 1999). On the record before the Court, there is a genuine issue of material fact as to whether Lunn and Rendell engaged in discriminatory conduct that would subject them to liability under Ohio Revised Code § 4112. However, there is insufficient evidence to support a finding of liability against Davies, Biss, Pilkington, or Elliott. Judgment will be entered in their favor accordingly.


b.      Defendant THL

THL contends that it cannot be held liable for Tellermate's actions with respect to the Browns' termination. According to THL, it is a separate corporation from Tellermate and is not involved in the day-to-day operations of Tellermate, including hiring or firing decisions.

In response, the Plaintiffs insist that Tellermate and THL are "one and the same." Pls.' Resp. in Opp. at 47. According to them, THL: directed Tellermate's business affairs, shared the same officers and directors as Tellermate, and submitted proposals under Tellermate's name and represented that THL would make sales and supply Tellermate's products.

In reply, THL argues that the Plaintiffs failed to present any evidence that THL was responsible for their termination. To the extent that the Plaintiffs argue that Tellermate is the alter ego of THL, THL emphasizes that the Plaintiffs rely solely on inadmissible hearsay.

"Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation. However, under certain circumstances, the

corporate entity may be disregarded and a parent corporation and its subsidiary may be treated as

a single entity." Starner v. Guardian Indus., 758 N.E.2d 270, 275 (Ohio Ct. App. 2001) (internal

citations omitted).

> In determining whether a subsidiary is an alter ego of the parent corporation, Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent. See Microsys Computing, Inc. v. Dynamic Data Sys., LLC, No. 4:05 CV 2205, 2006 WL 2225821, *6 (N.D. Ohio Aug. 2, 2006). This Court has considered additional factors such as (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation. See id.

Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357,

362–63 (6th Cir. 2008).

In Danziger v. Luse, the Ohio Supreme Court considered whether a subsidiary bank was

an alter ego of its parent company. 815 N.E.2d 658 (Ohio 2004). The Court held that:

> the separate corporate existence of the bank should be disregarded. The company owns all of the stock of the bank and has no assets other than the bank. The company and the bank have the same directors. All of the officers of the company are also officers of the bank. The company and the bank hold shareholders' meetings on the same day and at the same place. All of the income of the company is derived from dividends paid by the bank. It is abundantly clear from reviewing the record that the company is the bank and that in this case, the bank's separate corporate existence should be disregarded.

Id. at 662–63. In a brief concurrence, Justice O'Connor explained her reasoning for joining the

majority's decision:

> The determinative fact of this case is that the sole business purpose of the holding company was to own the bank. If the holding company controlled multiple subsidiaries or conducted banking operations on its own, the case would present a closer question. Here, the only apparent reason to own part of the holding company is to own the bank. This, combined with the identity of the directors and officers of the two companies, weighed heavily in arriving at the judgment announced today.

Id. at 663 (O'Connor, J., concurring).

24

Here, the Plaintiffs present no evidence that (1) THL and Tellermate do not observe corporate formalities, (2) THL and Tellermate do not keep corporate records, or (3) that Tellermate is not financially independent from THL. Instead, the Plaintiffs argue that THL directed the business affairs of Tellermate and that THL and Tellermate "share the same officers and directors." Pls.' Resp. in Opp. at 47. In the Plaintiffs' view, THL and Tellermate are one and the same.

The record contains little support for the Plaintiffs' assertion. Jon Sopher, chairman of the DHL Board of Directors, attended two meetings of Tellermate officers and sales executives in 2006 and 2007. Paul Rendell a member of the board of THL, is the Chief Executive Officer of Tellermate. David Lunn, who is also a director of THL, was appointed by Rendell as the acting marketing director of Tellermate. Lunn reports to Rendell both in his capacity as an employee of Tellermate LTD and in his role as supervisor of the salesforce of Tellermate. To the extent that officers and directors of THL and Tellermate overlap, "that factor alone is not enough to warrant a finding that the subsidiary is an alter-ego of the parent corporation." Garlock v. Ohio Bell Tel. Co. Inc., No. 1:13CV02200, 2014 WL 2006781, at *6 (N.D. Ohio May 15, 2014) (collecting cases).

In addition to overlapping directors and employees, the Plaintiffs maintain that THL was in charge of directing the business affairs of Tellermate. The evidence proffered to support this assertion, Mr. Brown's affidavit, is based on hearsay and therefore inadmissible. See Robert Brown Aff. at ¶ 94 ("We were always told that THL was in charge of directing the business affairs of Tellermate, Inc, and THL").

The Plaintiffs' evidence does not establish a legal basis for finding for finding that Tellermate was an alter ego of THL.

c.      Defendant Insperity

Insperity maintains that it is not liable for the actions of its former client, Tellermate. According to Insperity, the plain language of its Customer Service Agreement (CSA) with Tellermate provides that Insperity had no authority to terminate the Plaintiffs' employment. Instead, Tellermate, and Tellermate alone, was the only party that that had the right to make personnel decisions related to its business. Further, Insperity argues that Ohio law prohibits it from being liable as a matter of law because of its status as a professional employer organization (PEO).

At the present time, section 4125.03(E)(1) of the Ohio Revised Code provides that "[a] professional employer organization shall not be liable for the acts, errors, and omissions of a client employer or a shared employee when those acts, errors, and omissions occur under the direction and control of the client employer." Ohio Rev. Code § 4125.03(E)(1) (West 2015) (effective March 22, 2013). This provision would appear to exempt Insperity from liability for Tellermate's allegedly discriminatory acts in terminating the Plaintiffs' employment. However, as the Plaintiffs correctly note, they were terminated in August 2011, well before § 4125.03(E)(1) went into effect. At the time of their termination, the Ohio Revised Code did not contain a similar provision. See Ohio Rev. Code § 4125.03 (West 2011).

On the one hand, the applicable statute and Mrs. Brown's employment agreement[3] with Insperity suggest that Insperity could be liable for Tellermate's allegedly discriminatory conduct. In 2011, the relevant Ohio statute defined a PEO as "a sole proprietor, partnership, association, limited liability company, or corporation that enters into an agreement with one or more client

---

[3] The Court has been unable to locate Mr. Brown's employment agreement in the record.

employers[4] for the purpose of coemploying all or part of the client employer's workforce at the client employer's work site." Ohio Rev. Code § 4125.01(C) (West 2011). Under the same statute, to "coemploy" meant "the sharing of responsibilities and *liabilities* of being an employer."[5] Id. at § 4125.01(B) (West 2011) (emphasis added). Further, the statute provided that "[t]he professional employer organization with whom a shared employee is coemployed has a right of direction and control over each shared employee assigned to a client employer's location." Id. at § 4125.03(B) (West 2011). The language of this statute was consistent with Mrs. Brown's employment agreement with Insperity, which states, "[Insperity] maintains a right as a co-employer along with [Tellermate] to make personnel decisions and to evaluate Employee's qualifications, duties, work assignments and job performance." Christine Brown Employment Agreement at ¶ 3, doc. 72-46.

On the other hand, the Client Service Agreement between Tellermate and Insperity suggests that Insperity cannot be liable for the allegedly discriminatory acts of Tellermate. In June 2005, Tellermate entered into a contract with Insperity's predecessor, Administaff, to provide human resources services to Tellermate. Client Service Agreement, doc. 52-1 at 10–20. As part of that agreement, Insperity and Tellermate both became "co-employers of the worksite employees assigned to [Tellermate's] worksite." Id. at 10. While Insperity reserved the right to hire or terminate Insperity's employment relationship with any worksite employees, Tellermate retained the right to hire and fire with respect to Tellermate's relationship with any worksite employees. Id. The CSA provided that Insperity and Tellermate would "each be responsible for its own compliance with all federal, state and local employment laws[.]" Id. at 11.

---

[4] A client employer was defined as a "corporation that enters into a professional employer organization agreement and is assigned shared employees by the professional employer organization." Ohio Rev. Code § 4125.01(A) (West 2011).

[5] The current statute contains the same definition of "coemploy." See Ohio Rev. Code § 4125.01(C) (West 2015).

On the record before the Court, the business relationship between Insperity and Tellermate is unclear. So too is the employment relationship between Insperity and the Plaintiffs. The relevant Ohio PEO statute and Insperity's employment agreement with Mrs. Brown suggests that Insperity could be liable for the actions of Tellermate. In light of the mixed factual record concerning this issue, the Court will deny Insperity's request for summary judgment.

B.    *Counts Two Through Nine*

The Plaintiffs assert a variety of claims in Counts Two through Nine of their complaint including promissory estoppel, breach of contract, conversion, detrimental reliance, unjust enrichment and negligence. The Defendants moved for summary judgment on all of these counts. In their response, the Plaintiffs did not oppose the Defendants motion on Counts Two through Nine. After the Defendants filed their reply, the Plaintiffs filed a Motion for Leave to File Surreply (doc. 80) in which they sought to address the Defendants' arguments with respect to Counts Two through Nine.

The Court discussed the Plaintiffs' Motion with counsel at the oral hearing held on July 17, 2015:

| | |
|---|---|
| Plaintiffs' Counsel: | Mr. Obringer stated that we did not discuss the promissory estoppel claim, the conversion claim, unjust enrichment – |
| The Court: | Let's talk about that. |
| Plaintiffs' Counsel: | Yes, sir. |
| The Court: | Defendants filed their Motion for Summary Judgment. They addressed all of your claims, including the claims alleged in Counts 2 through 9. And you filed your response, and you did not oppose the Motion for Summary Judgment on Counts 2 through 9. |

|                      |                                                                                                                                                                                                                                                                                                                                                                   |
|----------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                      | Indeed, the only time you raised any opposition is in a surreply, which the Court -- and you filed a Motion for Leave to file it, and the Court denied that motion without prejudice. Well, I am now denying it with prejudice, and simply because it is just too late to serve opposition to a motion in a surreply. It is not fair. So the Court considers the motion unopposed. |
| Plaintiffs' Counsel: | With regards to Counts 2 through 9, Your Honor, can I be heard on that? We discussed the promissory estoppel claim, we discussed the conversion claim and the fact –                                                                                                                                                                                               |
| The Court:           | You never even suggested to the Court that you were opposing the Motion for Summary Judgment on those claims. You didn't ask the Court to deny the Motion for Summary Judgment as to those claims.                                                                                                                                                                  |
| Plaintiffs' Counsel: | Your Honor, we asked the Court to deny the Motion for Summary Judgment in its entirety.                                                                                                                                                                                                                                                                            |
| The Court:           | Well, that doesn't do it. I mean, the Court expects some argument and some reason. It is just too late to do it in a surreply.                                                                                                                                                                                                                                     |

Oral Hr'g Tr. at 68–69, doc. 241. The Plaintiffs failed to oppose the Defendants Motion for

Summary Judgment on Counts Two through Nine in a timely manner. Therefore, the Court will

grant the Defendants' Motion with respect to Counts Two through Nine.


C.      *Count Ten*

In Count Ten, the Plaintiffs allege that:

Insperity assumed a duty to the Browns to properly advise, train, and guide Tellermate so that it would not unlawfully discriminate against the Browns and commit other unlawful acts but failed to exercise reasonable care to perform that duty. . . . As a result of Insperity's negligence, the Browns were unlawfully terminated, suffered loss of commissions due to them, and suffered a loss of their valuable stock options.

Compl. at ¶¶ 81–82.

Insperity argues that the Plaintiffs' negligence action must fail. According to Insperity, (1) it owed no duty of care to the Plaintiffs; (2) even if it did owe the Plaintiffs a duty of care, it did not breach that duty; and (3) any negligent hiring claim made by the Plaintiffs fails because Insperity did not employ the Tellermate managers accused of discriminating against the Plaintiffs.

In response, the Plaintiffs assert that Insperity owed the Plaintiffs a duty to (1) prevent them from being discriminated against on the basis of their age and (2) to properly train, supervise, and advise Tellermate's supervisors to prevent those superiors from discriminating against the Plaintiffs. According to the Plaintiffs, Insperity's duty to them arose out of the Defendants' joint employee handbook, the Defendants' Client Service Agreement, and Insperity's employment agreements with the Plaintiffs.

"In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." Cromer v. Children's Hosp. Med. Ctr. of Akron, 29 N.E.3d 921, 928 (Ohio 2015) (citing Menifee v. Ohio Welding Prods., Inc., 472 N.E.2d 707 (Ohio 1984)). "A defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position. Injury is foreseeable when a defendant knows or should know that its act is likely to result in harm to someone." Nichols v. Lathrop Co., 825 N.E.2d 211, 214 (Ohio Ct. App. 2005) (citation omitted). The Court cannot discern a legal basis for finding that Insperity owed the Plaintiffs a duty to prevent the Plaintiffs from being subject to age discrimination. Nor have the Plaintiffs identified grounds for such a finding in their filings here. The Court will therefore grant Insperity's request for summary judgment on the Plaintiffs' negligence claim.

30

To the extent that the Plaintiffs can be understood to make a negligent training or supervision claim, this requires them to demonstrate: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act causing the plaintiff's injuries; and (5) the employer's negligence in hiring or supervising the employee as the proximate cause of the plaintiff's injuries." Retuerto v. Berea Moving Storage & Logistics, — N.E.3d —, 2015 WL 3823281 at *9 (Ohio Ct. App. June 18, 2015) (citing Peterson v. Buckeye Steel Casings, 729 N.E.2d 813 (Ohio Ct. App. 1999)). Here, the Plaintiffs have failed to demonstrate the existence of an employment relationship between Tellermate and Insperity. Insperity is entitled to summary judgment on the Plaintiffs' negligent training and supervision claim.

IV.    **Conclusion**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendants' Motion for Summary Judgment (doc. 52).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 27, 2015